# SMITH *v*. ROE.

(*Supreme Court of Colorado, December Term, 1883—Appeal from the District Court of Dolores County.*)

PLEADING—PROOF—VARIANCE.  In an action upon a contract, where there is a variance between the pleadings and proof, which might, under the Code, be cured by an amendment to the pleadings, a party desiring to avail himself of the advantage of such variance must do so at the trial. Objection comes too late when made for the first time in the Supreme Court.

STONE, J.  Suit was brought in the Court below by appellee to recover the sum of $1,000 upon an alleged contract for services in negotiating the sale of certain mining claims of appellant.  The complaint alleged that in February, 1880, the appellant, Smith, agreed with the appellee, Roe, that if said Roe would assist in the sale of four certain mines, he, Smith, would, in case said mines were sold on or before the 15th of May, 1880, pay to said Roe $250 for each of said mines so sold before the said 15th of May; and that Smith then and there made and delivered to Roe, four checks on the M. and M. Bank at Ouray, the payment of each conditioned, as therein expressed, on the sale of one of the four mines named, on or before the date aforesaid; that Roe, in pursuance of this contract had the mines bonded to one Suydam, for conveyance of the property to Suydam, on condition that the latter pay to Smith $4,000 therefor on or before May 15, 1880, which bonds were duly recorded, and by Roe forwarded to Suydam in New York, together with reports and statements concerning the property; that afterwards, in March, the said property was sold by Suydam under the said bonds to one Parrish of New York, for the sum of $4,000, and that afterwards, on the 28th of April, Smith made and delivered a deed of the property to Parrish and received the said sum of $4,000, and that thereupon the said Roe demanded payment of the checks aforesaid, but that Smith refused to pay the same or any part, wherefore said Roe sues, etc.

The answer of appellant denied each and every allegation of the complaint, without setting up any new matter.

The case was tried to the Court without a jury, and resulted in a finding and judgment for appellee, the plaintiff below, in the sum of fifty dollars, which judgment the appellant, Smith,

asks this Court to reverse, on the ground that it is against the weight of evidence, and further, that the evidence wholly fails to support the judgment, for the reason, that under the pleadings there could be no recovery except upon the contract declared upon in the complaint; whereas, the judgment was as upon a *quantum meruit*, which was not pleaded in the action.

The facts which appear to be established by the evidence, are, that in February, 1880, Smith executed four bonds for the sale of the four mines specified at the price of $1,000 each, the bonds running to one Suydam, and the property to be sold by the 15th of May, 1880; deeds for the conveyance of the property were also made and deposited in escrow, and the memorandum checks, as set out in the complaint, were also made by Smith and delivered to Roe together with the bonds. These bonds were recorded in the proper county, and were then forwarded by Roe to Suydam in New York, together with reports, etc., as to the property; that through the acts and representations of Roe, Mr. Suydam was induced to come out from New York to examine the property, with the view of purchasing it; that after his arrival in April, he learned in some way that he could buy the property by dealing with the owner, Smith, directly, at a less price, and therefore refused to take the property of Roe at the price of $4,000 fixed in the bonds; that Smith, without the knowledge or assent of Roe, gave a power of attorney to one Butler, to sell the same property; that Butler thereupon went to Suydam and offered the property for $2,000, which offer Suydam accepted, and as he himself testified, "for fear that there was something wrong," paid Butler $1,000 down upon the spot, and took a deed from B. therefor, which sum was paid over to Smith by Butler; this occurred on April 28, 1880; that owing to some supposed defect in the power of attorney, Suydam afterwards demanded another deed from Smith direct, but after the deed was offered refused to pay any more money thereon, and that seems to have been the end of the transaction between Smith and Suydam. Afterwards, however, a deed of the same property from Smith to one Parrish, of New York, for whom it appears Suydam was buying the property, was made and put upon record, in which deed the price of the property, as the consideration for the deed, is expressed to be $4,000. There was some conflict between the

testimony of Smith and that of Roe respecting the transaction of Smith with Suydam, but the testimony of Suydam appears candid throughout, and he states that he bargained with Smith through Butler simply because he learned that he could buy it for one-half the amount named in the bonds of Smith to him through Roe. Roe testified that in case of a sale of the mines within the time stipulated, Smith was to pay him $1,000, or $250 for each mine so sold, as specified in the memorandum checks, regardless of the price at which the mines were sold. Smith, in his testimony, denied this, and stated that he was himself to receive $2,000, for all of the four mines, or $500 for each, and that it was understood between all parties in interest, that all over $2,000 received from the sale, should go to Roe and one Hyland, who was co-operating with Roe, and to whom also four conditional checks were given by Smith, aggregating $1,000, of the same tenor as those given to Roe; but that it was agreed to try to sell at $4,000, and not at a greater price, and that the property was therefore bonded to Suydam for this price. This certainly seems the most reasonable construction to put upon the agreement, considering both the facts which were admitted, and those which were disputed; for it is difficult to believe, upon the whole evidence, that Smith agreed to give the $2,000 commission to Roe and Hyland, and at the same time agree that the property might be sold at any price whatever; and considering, also, that it further appeared in testimony that Butler was a party in interest in the property with Smith, and was entitled to one-half of the price that Smith was to receive.

That there was a failure to make the sale in accordance with the original agreement is evident, but that such failure' may have been due to the conduct of Smith is equally evident. It is not disputed that Roe performed all the services that he was required and expected to do under the agreement, in furtherance of the sale, and that the payment of the $1,000 to Smith under the sale, such as it was, by Smith to Suydam, through Butler, was brought about primarily by means of the previous efforts of Roe. And it cannot be said that the sale might not have been made by Roe under his agreement therefor, had he been allowed by Smith the full time stipulated by that agreement in which to make the sale. It appears from the testi-

mony of Suydam that soon after he arrived upon the ground to examine the property, he learned that by dealing directly with Smith, he could buy the property for less than the price at which it had been bonded to Roe, and this resulted in Smith offering it through Butler for $2,000, that sum being the amount Smith was to receive under his agreement with Roe. It seems an attempt on the part of Smith to facilitate a sale by underbidding his own agent Roe, and getting his own half of the agreed price, leaving Roe without any commission for his services in procuring a purchaser. At least this action of Smith was a violation of his agreement with Roe, who was thus cut off from a chance of making the sale within the time allowed him by the agreement; and we may fairly presume that if allowed the full time conditioned in the agreement, Roe might have sold the property either to the purchaser in hand, or to some other purchaser, within that time, and for the price named in the bond, in which case he would be entitled to the specific sum sued for. It is a familiar doctrine of the law of contracts, that if one party is prevented from fully performing his contract, by the fault of the other party, the latter cannot be allowed to take advantage of his own wrong to exempt himself from liability under the contract. But since the appellee, Roe, is not finding fault with the judgment of the Court below, we have only to deal with the objections to the judgment as coming from Smith, the appellant, and upon his part we think there is no good ground for reversal. He admitted, in his testimony, the services of Roe in the transaction, and that he, Smith, had offered to pay Roe $50 as compensation for such services, and we presume this admission was the basis of the amount found by the Court in favor of the appellee. However incorrect this was as a basis for the judgment, in so far as it relates to the appellee, yet in respect to the appellant, the latter has no just cause of complaint, that the judgment against him is for a sum less than the amount sued for, or that he would be liable for under a *quantum meruit*. So far as the record shows, he made no objection to a variance between the complaint and the proofs in the Court below, where, under sections 77 and 78 of the Code, an amendment, if necessary and proper, might have been made to cure the objection, nor is it pretended that

appellant was misled by such variance. In such case the objection is too late when made for the first time in this Court. *Sussendorff* v. *Schmidt et al.*, 55 N. Y., 319. There have been two trials of the case below, resulting in a judgment substantially the same in both, and no sufficient reason appearing for disturbing the judgment herein questioned, it will be affirmed.

*Judgment affirmed.*

*L. V. Rosser* and *Stallcup, Luthe & Shaforth,* for appellant.

*Frank W. Ingersoll,* for appellee.