[No. 4365.]

## The Fisk Mining and Milling Company v. Reed et al.

1. **Contracts—Certainty—Mines and Mining—Drainage.**

A contract is not void for uncertainty if it is sufficiently definite so that it can be ascertained with a reasonable degree of certainty what the parties intended to agree to, even though it does not enter into all the details with respect to its subject-matter. Where the owners of a mine by pumping the water from their own mine drained the water from another mine, and the owner of the other mine promised to pay its proportion of the expense of the pumping; such promise is not void for uncertainty because it failed to state just how much or what aliquot part of the expense should be paid by each.

2. **Contracts—Mutuality.**

In order to enforce an unexecuted contract mutuality is necessary, but this requisite does not apply to a contract which has been executed. Where one party to a contract has performed that which he agreed to do, the other must pay the consideration he agreed to pay, irrespective of the question of whether or not either was originally bound by the terms of the contract.

3. **Mines and Mining—Drainage—Apportionment of Expenses—Pleading.**

Where two mines have the same water level and drainage so that pumping water from one drains the other, in an action by the owners of the mine from which the water was pumped, against the owner of the other, for a proportionate part of the expense of pumping out the water, a complaint which alleged that the mines were drained by plaintiffs; that during the time

both plaintiffs and defendant were operating their respective mines; that without such drainage defendant could not have operated its mine and alleged what was the entire expense of pumping out the water, all of which had been borne by plaintiffs, and that defendant had agreed to pay its proportion of such expense, was a sufficient statement of facts upon which to base an allegation that one-half the expense borne by plaintiffs was a just and fair proportion which defendant should pay, and to sustain an action for that amount.

### 4. Pleading—Action for Services—Promise to Pay—Request.

In an action for the value of services performed, where the complaint alleged the performance of the services by plaintiff and that defendant promised to pay for the same, it will be implied that the services were performed at defendant's request, and it is unnecessary to specifically allege such request.

### 5. Contracts—Mines and Mining—Drainage.

Where plaintiffs and defendant were operating separate mines, having the same water level and drainage, and plaintiffs, by pumping the water from their mine also drained defendant's mine, thus enabling defendant to work its mine, which it could not have done without pumping out the water had not plaintiffs drained the mine by pumping the water from their mine and both mines were equally benefited by the pumping of the water, a promise by defendant to pay to plaintiffs as part of the expenses of such pumping, "what was just and fair," should be construed as a promise to pay one-half of such expenses.

### 6. Same—Promise to Pay for Past Services—Consideration.

Where plaintiffs and defendant were operating separate mines having a common water level and drainage, and plaintiffs by pumping the water from their mine also drained defendant's, and defendant derived as much benefit as plaintiffs from such pumping, and plaintiffs had endeavored at various times to effect some arrangement with defendant whereby defendant should pay its proportion of the expense of such drainage, a promise by defendant to pay whatever was just and fair should be construed as a promise to pay its proportion of the past as well as the future expenses of such drainage, and where plaintiffs continued to pump the water and drain the mines after the making of such promise by defendant of which defendant had the benefit, the consideration which it thus accepted went to the entire undertaking upon its part and rendered it liable to pay its proportion of the expense of such drainage, before as well as after such promise.

7. Contracts—Mines and Mining—Drainage.

Where plaintiffs, by pumping water from their mine also drained defendant's mine and defendant received an equal benefit with plaintiffs from such pumping, a promise by defendant to pay plaintiffs its proportion of the expenses of such pumping is binding on defendant notwithstanding defendant had no control over the pumping by plaintiffs and notwithstanding plaintiffs did not agree to continue such pumping for any definite period of time.

8. Mines and Mining—Drainage—Corporations—Principal and Agent.

Where a mine could not be worked without draining the water therefrom, provision for the drainage of such mine is one of the matters which the manager of the corporation mine owner must necessarily have had authority to make, and where such manager promised to pay to the owners of another mine, through which both mines were drained, a part of the expense of pumping out the water, the corporation owner is estopped to deny the authority of its manager to make such promise.

9. Evidence—Incompetent—Harmless Error.

The admission of incompetent and immaterial evidence is not reversible error, where it affirmatively appears that such evidence could not have influenced the court in its findings on any issue in the case.

10. Principal and Agent—Contracts—Mines and Mining—Drainage.

The manager of a corporation mine owner, having general authority to contract for draining the mine, would have authority to bind the company to pay for past drainage as a part of the consideration for continuing such drainage in the future in the absence of notice to the parties with whom he contracted that he had not such authority.

11. Contracts—Consideration—Past and Future Services.

Where there is a request to continue services of a character theretofore rendered, the continuance of such services is a sufficient consideration to support a promise to pay for the services rendered prior to the requested continuance and it is not necessary that a definite time be fixed for the continuance of such services, if they be continued a reasonable time.

12. Appellate Practice—Variance.

An objection of variance, if not made in the lower court, will not be considered on appeal.

*Appeal from the District Court of Arapahoe County.*

Messrs. Teller & Dorsey, for appellant.

Mr. L. M. Goddard and Mr. Clinton Reed, for appellees.

Mr. Justice Gabbert delivered the opinion of the court.

The purpose of this action, commenced by appellees as plaintiffs, against appellant, as defendant, was to recover from the latter its alleged proportionate share of the expenses incurred by plaintiffs in draining mines operated by the parties in severalty. From a judgment for plaintiffs for twenty-seven thousand dollars, the defendant appeals.

The cause of action was stated in two counts. The first counted upon a contract between the parties, and the second upon the statute relating to the drainage of contiguous mining properties. According to the averments of the first count, it appears that for the period of twenty-seven months subsequent to July 23, 1891, the parties were severally engaged in the operation of contiguous mines having a common drainage or water level; that when the water was taken from neither it would rise to a common level in each; that pumping the water from plaintiffs' mines drained the property of defendant; that plaintiffs, during the period mentioned, pumped the water from their mines, thereby draining the mine of defendant, and that the expense thus incurred by them was two thousand dollars per month. The complaint then charges, after alleging a demand upon the defendant about June 1, 1891, to pay its just and fair proportion of such expense. "And the said defendant then and there, in consideration of the premises and of the benefits accruing to it by reason of said drainage, and in consideration that it would be continued to drain said mine as they were doing, undertook and

promised the plaintiffs that it would pay to the plaintiffs its just and proper proportion of said cost of drainage as aforesaid.'' It is alleged that the just and fair proportion which the defendant should pay was the sum of one thousand dollars per month. To this complaint a general demurrer was interposed, which was overruled.

We shall first consider the questions raised on the demurrer to the first count. It is asserted that this count fails to state a cause of action for four reasons: (1) That the contract declared upon is so uncertain that it cannot be enforced; (2) that it does not appear from its terms that it was mutual; (3) no facts are stated from which it can be determined what would be a just and fair proportion for the defendant to pay; and (4) it is not charged that the expense of pumping was incurred at the request of the defendant.

1. A contract is not void for uncertainty, even though it does not enter into all the details with respect to its subject-matter, if, according to its terms, it is sufficiently definite so that it can be ascertained with a reasonable degree of certainty what the parties intended to agree to. Thus tested the terms of the agreement with respect to each can be readily ascertained. In brief, the contract was to the effect that in consideration of the plaintiffs' pumping the water from all the properties the defendant should pay them its proportion of the expense of such pumping. True, the parties did not agree in specific terms how many dollars each should contribute to the expense of drainage, nor what aliquot part of such expense each should bear; but they did agree how the sum which the defendant should pay should be determined; that is, that it "would pay to the plaintiffs its just and proper proportion of said cost of drainage." So that it only remains to determine from the

contract, in connection with its subject-matter and the conditions under which the parties contracted, to ascertain for them, when a dispute has arisen, what would be a just and fair proportion of the expenses which the defendant should pay.

2. In order to enforce an unexecuted contract, mutuality is necessary, but this requisite does not apply to a contract which has been executed. As to an executory contract, want of mutuality or reciprocal obligations of the contracting parties would be a good defense in an action to enforce specific performance, or to recover damages for its breach, but when executed and the action is for the purpose of enforcing the obligation arising from its execution, the want of its mutuality originally is immaterial. —*Frue v. Houghton,* 6 Colo. 318; *Wood v. Casserleigh,* 30 Colo. 287, 71 Pac. 360; *Marie v. Garrison,* 83 N. Y. 14; *Crawford v. Avery,* 35 Miss. 205.

According to the complaint, the plaintiffs have performed for the defendant that which they agreed to do, and the latter must, therefore, pay the consideration agreed upon, irrespective of the question of whether or not either was originally bound by the terms of the contract further than as conditions precedent which would entitle the one performing the acts agreed upon to a performance by the other of the obligation resulting from such performance.

3. It is argued by counsel for appellant that the averment in the complaint to the effect that the just and fair proportion of the amount which the defendant should pay is the sum of one thousand dollars per month, is but a conclusion of the pleader, and that no facts are stated upon which such conclusion can be predicated. It appears from the complaint that the mines of the respective parties were drained by plaintiffs; that during this period both the plaintiffs and defendant were engaged in operat-

ing their respective properties; that the mines had a common drainage so that draining one drained the other; that if plaintiffs had not been engaged in working their properties, the defendant would have been compelled, in order to operate its property, to have pumped the water which the plaintiffs pumped; that the expense of drainage, all of which was borne by the plaintiffs, was the sum of two thousand dollars per month. These statements disclose what would be a just and fair proportion for the defendant to pay on account of such drainage. Both parties were equally benefited by having their mines drained, because they were thereby enabled to work their properties, and therefore the expense which the plaintiffs incurred on this account should be equally divided between the plaintiffs on the one part and the defendant on the other.

4. There is no specific averment in the complaint that the pumping operations of plaintiffs were carried on at the request of the defendant, but the absence of this statement does not render the complaint obnoxious to the demurrer. The complaint avers that about the time the defendant began to operate its mine it promised and agreed with the plaintiffs that it would pay them its just and fair proportion of the expense of drainage, and that the plaintiffs, in consideration of such promise, did thereafter drain the mine of the defendant for a specific period. In such circumstances, the law implies a request, or, in other words, a promise to pay for services to be performed implies a request for their performance.—1 Parsons' Contracts, *474.

The issues made by the answer to the complaint were found in favor of the plaintiffs. From these findings it appears that the mines of the parties had a common drainage; that plaintiffs pumped the water from the property of the defendant from July 23,

1891, to October 23, 1893, and that the cost incurred by them in draining the several properties during this period was two thousand dollars per month; that defendant agreed to pay them what was fair on account of such expense, and that the fair proportion of this cost which defendant should pay was one thousand dollars per month. Counsel for appellant contend that the finding of the court that a contract was entered into between the parties is not justified for various reasons, which, summarized, are to this effect: The testimony was insufficient to establish a contract; that the alleged promise on the part of defendant was so indefinite and uncertain as to be unenforceable; that such promise only related to subsequent pumping, or, if it was intended to embrace pumping previous to the time it was made, that there was no consideration for such promise in so far as it embraced the latter; that defendant had no control over the pumping operations carried on by plaintiffs, and in the absence of an agreement on their part to continue such operations for a specified time, the defendant was not bound by its promise, and that the promise attempted to be proved was not made by any one having authority to bind the defendant.

In order to determine these questions, a brief reference to the evidence bearing upon them is necessary. From the testimony of one of the plaintiffs, it appears that they commenced to operate their mines in the early part of 1891; that pumping the water from these mines drained the one subsequently operated by defendant, and that it commenced to operate this property below the water level in July, 1891; that about this time the witness informed the manager of the defendant company that plaintiffs, by operating their properties, were draining the water from the mine of defendant, and wanted the company to pay a part of the expense of drainage, and in

reply to the question as to what proportion, the witness stated: "Whatever is fair; you have a great deal better mine than we have, and you ought to pay as much as I do, certainly." The manager did not say whether any amount would be paid or not, but stated, in substance, that he had not heard from his company, although he had written them on the subject. The witness further stated that he subsequently talked with this manager several times on the subject of drainage, and while he never promised positively that anything would be paid by his company on that account, he did say, subsantially, that plaintiffs drained the mine of defendant, and that it was only fair that they should be paid therefor. In September, 1893, this witness had several conversations with the then manager of the defendant with reference to the expense of pumping, when he informed the witness that if plaintiffs were draining the mine of defendant, it would do what was fair toward paying the actual expense and cost of such drainage; that the company was considering what it ought to pay, and "that he could say that they would pay what was fair." The parties never agreed upon the amount which the defendant ought to pay, or what proportion of the expense incurred by plaintiffs in draining the mine should be paid by the defendant. The manager last above referred to denied that he ever promised to pay the plaintiffs anything, or that he ever consented to the propositon that the company ought to pay any sum whatever on account of the claim of plaintiffs that they were draining the mine, and denied that he had any authority to enter into an agreement with the plaintiffs with respect to drainage. There was other testimony bearing on the question of the contract claimed by plaintiffs to have been made with the defendant, but not of a character which would aid a discussion of the questions raised

by counsel for appellant. After the conversation last above referred to, the plaintiffs continued to pump water as before until long after October 23, 1893, but as this case was commenced about that time, the pumping subsequent to that date is not involved. The defendant worked its property continuously between July 23, 1891, and October 23, 1893. During this period the expense incurred by plaintiffs in pumping was two thousand dollars per month. This fact is practically undisputed. The testimony clearly supports the findings of the court that the mines of the parties had a common drainage, and that plaintiffs, by draining their property, drained the mine of defendant.

In so far as any argument is based upon the assumption that the testimony is insufficient to establish the contract pleaded because contradicted, either directly or by circumstances called to our attention, it is sufficient to say that these were matters for the trial court to consider, and its findings on the issue of the making of the contract being in favor of plaintiffs on conflicting testimony, will not be disturbed on appeal when there is sufficient evidence to support it. The testimony on the part of plaintiffs was certainly sufficient from which to infer that the defendant did promise to pay them something on account of the pumping operations, and therefore supports the finding of the court on the subject of the contract, unless for one or more of the other reasons urged by counsel, the promise made by the defendant, as claimed by plaintiffs, cannot be upheld.

The contract declared upon, we have already indicated, was not subject to an attack on the ground of uncertainty, and it remains to determine whether the witness for plaintiffs has stated a contract sufficiently definite and certain to be enforced. The language of the promise. was to pay what was just and

fair. It is urged that this is so vague, indefinite and uncertain that it is impossible to ascertain how much was to be paid, or what proportion of the expense of pumping the defendant should discharge. In ascertaining what the parties really meant to agree to by virtue of the contract, the first point to consider is what they meant, understood and intended by the words employed, and as an aid to this end, the facts and circumstances surrounding the transaction at the time the contract was made may be taken into consideration. The promise of the defendant to pay what was fair does not of itself determine the amount which it should pay or what proportion of the expense of drainage should be borne by it. When, however, the conditions under which the promise was made are taken into consideration, it can readily be ascertained what it should do by virtue of such promise, and that, in the circumstances of this case, must be taken to be what the parties meant by the expression ''pay what was fair.'' Plaintiffs and defendant were both engaged in operating mines having a common drainage. The plaintiffs were bearing all the expense of such drainage. For a long time they had endeavored to obtain a promise from the defendant to pay its just proportion of this expense. Had plaintiffs not been operating their mines and the defendant had operated its property, it would have been compelled to hoist the water which the plaintiffs pumped. The plaintiffs, when the defendant took no steps to take care of the water common to all the properties, were compelled, in order to work their mines, to pump the water resulting from the common drainage. The whole of this expense was thus thrown upon them, although by their operations the defendant was just as much benefited as they by being enabled to work its property below the water level, and in fact, did so. Both were, therefore, equally benefited, and the

defendant should bear, as stated in the contract pleaded, "its just and proper proportion of the said cost of drainage," or, as testified by the witness, "what was just and fair." In such circumstances the cost of such drainage should be divided in proportion to the benefits derived therefrom, which would be one-half each, and that, therefore, is the meaning which must be imputed to the words which they employed in their contract with respect to what the defendant should pay.

When the plaintiff who testified and the manager of the company, about September, 1893, were discussing the subject of drainage, it is plain from the statements of the former that they had in mind the question of compensation for the drainage of the mine of defendant past as well as future. Plaintiffs had then been draining the several properties for over two years, and during that period had at various times endeavored to effect some definite arrangement with the defendant to pay its part of the expense and cost of drainage by which the defendant was benefited, so that the statement attributed to the manager, to the effect that his company was considering what it would pay, that it would do what was fair, and he could say it would pay what was right, clearly included drainage prior, as well as subsequent, to that time. Plaintiffs continued their pumping operations after that date. Of this the defendant has had the benefit. The consideration which the defendant has thus accepted went to the entire undertaking upon its part, and rendered it liable to pay its proportion of the expense of pumping performed before, as well as after, its promise. The rendition of services in consideration of a promise to pay for them, as well as those performed prior to the promise, is a sufficient consideration to uphold a promise to pay for the

latter.—*Irwin v. Locke,* 20 Colo. 148; *Roberts v. Griswold,* 35 Vt. 496.

The fact that the defendant had no control over the pumping operations of plaintiffs would not prevent it from entering into a binding arrangement the purpose of which was to have such pumping operations carried on for its benefit. That this arrangement does not appear to have contemplated that the drainage should be performed by plaintiffs for any particular length of time in the future, or that by the agreement claimed on the part of plaintiffs there was no mutuality, does not, for the reasons we have already given, relieve the defendant from the obligations imposed upon it by virtue of such pumping. The plaintiffs continued to drain the mine of the defendant after the promise made by its manager, and it remains for the defendant to make good its promise by paying what it agreed in consideration of the services performed by the plaintiffs.

The agents of the defendant with whom plaintiffs discussed the question of drainage were in the active management and control of its property. Its mining operations were being carried on under their direction. The agent with whom the witness Reed talked in September, 1893, testified at the trial that he had no authority to enter into a contract relative to drainage. This, however, is immaterial. He does not pretend to have made any such statement to the witness at the time of the conversation referred to. In carrying on mining operations through a shaft the water in a mine must be kept out; otherwise, the property cannot be operated below the water level. The defendant was working its property below that level. It appears, then, that provision for the drainage of its property was one of the matters which the manager of the defendant must necessarily have had authority to arrange for, and it is therefore estopped

from now claiming that the agent had no such authority. Parties dealing with a corporation have the right to assume and act upon the presumption, in the absence of notice to the contrary, that the authority of its agent with respect to its affairs extends to those matters which, from the nature and scope of his employment, it would be necessary for him to exercise in order to carry on the business of his principal of which he is in charge.—*Robt. E. Lee S. M. Co. v. O. & G. S. & R. Co.,* 16 Colo. 118.

Errors are assigned on the admission of alleged incompetent testimony which, it is claimed, was not material to the issue of the cost of drainage. The testimony as to what was the actual expense of carrying on the pumping operations was not disputed. From this it appears that the actual expense of such operations was not less than two thousand dollars per month. The testimony admitted over the objection of defendant which, it is claimed, was incompetent, could not, in the slightest degree, have affected the finding of the court as to what the expenses were per month which the plaintiffs incurred on account of drainage; so that although the testimony objected to may have been incompetent or irrelevant, in as much as it affirmatively appears that its reception could not have influenced the court in its findings on the issue of the pumping expenses, or any other issue in the case, it was harmless error.

The judgment of the district court is affirmed.

*Affirmed.*

### On Petition for Rehearing.

In support of a petition for rehearing, it is urged that the agent of the defendant who promised to pay for the pumping had authority only with respect to the current affairs of the company, and no authority as to matters which were past. For the past pumping,

standing alone, this proposition might be correct, but in view of the fact that this agent had authority, generally, to contract for the drainage of the company's mine, he would have the right, in the absence of any notice to the plaintiffs to the contrary, to arrange for those matters in the past which were part of the consideration for a continuance of the pumping operations in the future. In this connection it is urged that no facts were established which would estop the mining company from claiming that its agent did not have authority to arrange for the payment of the drainage of its mine. The expression that the company is now estopped from asserting that its agent did not have authority, as stated in the opinion, does not refer to what is ordinarily known as an equitable estoppel. The rule seems to be, generally, that it would not be in accordance with justice or business interests to allow corporations to deny the authority of agents acting within the apparent scope of their authority, or to repudiate contracts made by them, which from their relation to the company they apparently have authority to make.—*Crowley v. Genesee M. Co.*, 55 Calif. 273.

It is again urged that because the plaintiffs entered into no arrangement to continue the pumping for a definite length of time in the future, that there was no consideration for the promise to pay for the past drainage. In *Loomis v. Newhall*, 15 Pick. 159, it was held that an entire promise founded partly upon a past and executed consideration, and partly upon an executory consideration, is supported by the latter. Where there is a request to continue services of a character theretofore rendered, the continuance of such services is a sufficient consideration to support a promise to pay for those rendered prior to such request.—6 Enc. of Law, (2d ed.) 694; *Wolford v. Powers*, 85 Ind. 294.

Counsel for the defendant, in arguing this question, liken the promise upon which plaintiffs rely to support their recovery for the value of past pumping, to promises of forbearance, and contend that in such cases the promise is without consideration, unless a definite period of forbearance is fixed. We do not think the doctrine announced in such cases is altogether applicable, because it refers, generally, to the rights of third parties, who derive no direct benefit from the promise. The authorities, however, on this question, appear to be conflicting, but the later cases would indicate that where no time is mentioned, a reasonable time will be implied, and this is held to be a sufficient consideration.—Anson on Contracts, 2d Am. ed. 98, *75; 1 Parsons on Contracts, 8th ed. 458, *442; 9 Cyc. 344; *Calkins v. Chandler*, 36 Mich. 320.

Applying this rule, no fact is called to our attention which would justify us in holding that the plaintiffs did not continue their pumping operations for a reasonable length of time after the promise to pay for the past, as well as the future, pumping was made, inasmuch as it appears from the testimony that such pumping operations were continued for at least thirty days after this promise. In fact, we think from a further examination of the record, that the promise was probably made several months prior to the date suit was commenced. Aside from these reasons, it appears to us that there are other grounds sufficient to support the judgment, which, however, have not been discussed by counsel.

Negotiations were opened between the parties shortly after the defendant commenced the operation of its mine, and while no definite promise appears to have been made until some time after, it might well be said that this promise was but a consummation of the arrangement which the parties originally contemplated should be made.

On the subject of variance, it is sufficient to say, that the question was not raised below, and for that reason it will not be considered on appeal.—*King v. DeCoursey*, 8 Colo. 463; *Smith v. Roe*, 7 Colo. 95; *Colo. Mort. Co. v. Rees*, 21 Colo. 435.

The petition for rehearing is denied.