507 P.2d 1119 (1973)
Oscar C. HEWETT, Plaintiff-Appellant,
v.
SAMSONITE CORPORATION, a Colorado corporation, Defendant-Appellee.
No. 72-193.
Colorado Court of Appeals, Div. I.
March 20, 1973.
*1120 Clarke & Waggener, William P. Waggener, John E. Reilly, Denver, for plaintiff-appellant.
Isaacson, Rosenbaum, Spiegleman & Friedman, P. C., Sheldon E. Friedman, Denver, for defendant-appellee.
Selected for Official Publication.
ENOCH, Judge.
Oscar C. Hewett, plaintiff-appellant, filed a declaratory judgment action for the adjudication of his rights against those of Samsonite Corporation, defendant-appellee, with respect to certain patents. Trial was to the court. At the conclusion of plaintiff's evidence, defendant moved for dismissal. The court took the motion under advisement until the conclusion of defendant's evidence, at which time the motion was granted. Hewett appeals from the judgment which was entered for Samsonite. We reverse.
In January 1963, Hewett was employed by Samsonite as foreman of the model shop in which prototype models were fabricated from designs drawn by Samsonite's design and engineering department. Samsonite required certain of its employees, primarily inventors, at the time of their employment to execute a written agreement to assign any future inventions to the company as a condition of their employment. Hewett was not hired for the purpose of doing inventive work, and he was not asked to, nor did he, sign such an agreement. Hewett did, however, on his own initiative, invent or participate in the invention of three items which were subsequently patented by Samsonite.
The first item invented by Hewett in collaboration with fellow employees, John Rosing and William R. King, was a "soft-sided luggage case." A model was built in the shop in 1964 and shown to Hewett's supervisor who immediately obtained company approval for production. In April 1965 Samsonite completed a patent application on the item, and Hewett was called in by his supervisor and told to sign the assignment attached to the application. The assignment recited that Hewett was transferring all of his interest in the invention to Samsonite. The stated consideration was "one dollar and other valuable consideration, the receipt of which is hereby acknowledged. . . . "Hewett was told that Samsonite required him to sign because the item was invented while he was working for the company. Hewett asked about the dollar and the supervisor replied, "Well, this is just a figure of speech, a legal termyou won't receive the dollar." When Hewett inquired about the "other valuable consideration" his supervisor replied, "Well, you have a job with the company, haven't you ?"
The second invention, which Hewett developed alone, was a "synthetic resin structural panel." Again in 1965 Hewett was told by his supervisor to execute an assignment of his interest to this invention to Samsonite. This assignment, attached to Samsonite's patent application, also contained the same recital of consideration, and Hewett received the same response when he inquired about the "one dollar and other valuable consideration."
The third invention was done in collaboration with another fellow-employee, Tim M. Uyeda. It involved the perfection of a connector for a folding table leg. Prior to his assignment of this invention, Hewett's job in the model shop was terminated in December 1965. He was told that he could look for some other position in the company. He subsequently became foreman of the tool and die shop in the hardware plant at a reduced salary. In 1968, while employed in his new capacity, Hewett received in the mail a portion of Samsonite's patent application for the third invention with an assignment similar to the previous ones. It is undisputed that Hewett signed each of the assignments and that the inventions were all done on company time with company material and labor.
On October 3, 1969, Hewett was given a notice of termination due to a reduction of the work force. He was subsequently required to sign a general release of any and all claims against Samsonite as a condition *1121 precedent to his receiving termination pay. It was a company policy that termination pay was discretionary on the part of the company and would be paid only to certain employees who were terminated without cause. The general release signed by Hewett was a standard form used for any employee receiving termination pay. Plaintiff also received a check in payment of his interest in the company pension fund. Though Hewett had a vested unconditional right to his share of this fund as did each employee, there was a general release on the back of the check which was signed concurrently with endorsement.
The trial court found that Hewett had assigned all of his right, title, and interest in and to the patents to Samsonite and that those assignments "were and are effective and supported by good and valuable consideration." The court, however, made no finding as to what the good and valuable considerations were. We have searched the record, and we find no evidence to support the court's conclusions. Though an appellate court is bound generally by the findings of fact of the trial court, Rutherford v. Scarborough, 28 Colo.App. 352, 472 P.2d 721, where such findings clearly are not supported by competent evidence, the rule is not applicable.
It is undisputed that neither the one dollar nor any other cash payment was made. Samsonite contends, however, that by allowing Hewett to work for the company, sufficient consideration was given to make the assignment binding. Fisk Mining and Milling Co. v. Reed, 32 Colo. 506, 77 P. 240, is cited as its authority for this contention. We have examined that case, and we find no similarity in the facts or the law of that case to the case at hand. Our attention had not been called to any supportive authority, and we find none to bolster Samsonite's contention that continuation of employment, such employment already having been mutually bargained for, is sufficient consideration to support an assignment of invention or patent rights.
In Dalzell v. Dueber Watch Case Manufacturing Co., 149 U.S. 315, 13 S.Ct. 886, 37 L.Ed. 749, the United States Supreme Court held that even in a situation where a company has employed a skilled workman "to devote his time and services to devising and making improvements in articles there manufactured," the company "is not entitled to a conveyance of patents obtained for inventions made by him while employed, in the absence of express agreement to that effect." Speaking to the same subject, the court in Howard v. Howe, 7 Cir., 61 F.2d 577, stated:
"Even though it be admitted in the present case that an express contract to make inventions for the employer is not necessary, it is surely requisite that there be something in the duties of the employee that would indicate that his compensation was for labor in making the invention and that both employer and employee so understood, before it can be said that the fruits of the latter's creative labors belong to the employer. We do not believe that a finding of such situation is warranted by the present record. We find no evidence that appellee was ever employed and paid as an inventive employee. The officer who employed him testified that he was made foreman of the pattern department and as such simply had charge of pattern makers and repair and construction of patterns required for moulding; that nothing was said about employing him as an inventor or about assigning any inventions he should make."
In the case at hand Hewett was neither hired nor paid to invent, and he had not signed any express agreement as some of Samsonite's employees were required to do whereby Samsonite would be entitled to a conveyance or assignment of the employees' rights to inventions or patents. Therefore, Samsonite had no right to the assignments of Hewett's interest in the three patents, and due to the lack of consideration Samsonite acquired no right by the alleged assignments.
*1122 However, as admitted by Hewett, Samsonite obtained a "shop right" to the three inventions.
". . . [T]he mere fact that an invention was conceived and developed while the inventor was employed by another does not give to the employer any right in or title to the invention. To establish a claim in the absence of an express contract, the employer must show that the inventor was engaged specifically to exercise his inventive faculties for the employer's benefit. Or he must establish the fact that the invention was conceived and developed during working hours with the aid of fellow employees and with the use of the employer's machinery and materials. In the first case the invention belongs to the employer; in the second instance, and this is the `shop right rule', the employer has an irrevocable but non-exclusive right to the invention. This rule is embedded and firmly established as a matter of principle in the law of the land." Kinkade v. New York Shipbuilding Corp., 21 N.J. 362, 122 A.2d 360, 61 A.L.R.2d 348.
Though shop rights have accrued to Samsonite, no title to such invention passed to it by virtue of such rights in the absence of a plain and unambiguous contract obligation by Hewett. United States Colloid Mill Corp. v. Myers, D.C., 6 F.Supp. 283.
The next question is what effect, if any, did the general releases signed by Hewett after termination of his employment, have upon his rights and those of Samsonite as to the title to the inventions and their patent rights. There was no mention of the inventions and their patent rights in either release, and there were no monies paid to which Hewett was not already entitled except the termination pay which was discretionary with Samsonite. The termination pay was not consideration for Hewett's interest since there is no evidence that it was regarded as such as a basis for its payment. Howard v. Howe, supra. As stated in Dalzell v. Dueber Watch Case Manufacturing Co., supra, an employer is not entitled to a conveyance of patents obtained for inventions made by an employee in the absence of an express agreement.
35 U.S.C. § 261 provides that patent applications, patents, or any interest therein are assignable "by an instrument in writing." Patents and rights in patents are incorporeal personal property. Patterson v. Kentucky, 97 U.S. 501, 24 L.Ed. 1115. An instrument which is claimed to be an assignment of a patent right must adequately express an intention to transfer ownership of the patent right. United States v. Krasnov, D.C., 143 F.Supp. 184. Therefore, the releases did not affect any change in the ownership right between the parties. Hewett still retains his original interests in the inventions and subsequent patents, and Samsonite continues to hold its shop rights thereto.
Judgment is reversed, and the cause is remanded with directions to enter judgment consistent with this opinion and to grant the relief prayed for by Hewett in his complaint.
COYTE and SMITH, JJ., concur.