**Gerald R. TERWILLIGER, Plaintiff,**

v.

**YORK INTERNATIONAL CORPORATION,
Defendant.**

Civ. A. No. 92–0131–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

May 4, 1994.

---

James W. Elliott, Jr., Bristol, VA, for plaintiff.

James P. Jones, Bristol, VA, for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This matter is before the Court on Defendant's, York International Corp. ("York"), motion for summary judgment.. Both parties have submitted numerous briefs and the motion has been argued before the Court. The Court views this matter as ripe for decision and accordingly grants York's motion for summary judgment.

### FACTS

In December of 1983, plaintiff, Gerald Terwilliger ("Terwilliger"), was offered a position as Manager of Product Development at Bristol Compressors[1] ("Bristol") by the Chief Operating Officer, Michael Young ("Young").[2] Terwilliger joined Bristol and in his position managed and supervised approximately 30 individuals in the post-invention work and development of products.

In 1987 Young approached Terwilliger and asked him to help develop a new high efficiency compressor.[3] Young told Terwilliger that if he were able to invent a competitive

compressor he would "be taken care of" and that Bristol would reward him. In early 1988 Terwilliger was successful in inventing a commercially competitive compressor. On September 13, 1988 Terwilliger executed an Assignment of the Invention ("Assignment") to Bristol for "good and valuable consideration."

After inventing the compressor, Terwilliger was assigned to the "Advanced Recip Project Team." The team's purpose was to work on the post-invention development of a manufacturing and production system for the new compressor. Certain bonuses were offered to the team members if they met specific time and production schedules. No bonuses were received by Terwilliger, as the schedules were not met by the team.

In 1989, as the result of a general reduction in the work force, Terwilliger was released from his employment with Bristol. Bristol provided a fifteen-month severance package to Terwilliger, which carried his salary through the beginning of December, 1991. All told, Terwilliger received over $500,000 for his work of seven years at Bristol.

On September 4, 1992, Terwilliger filed suit in this Court against York and Bristol. Terwilliger alleges in Counts One and Three that Bristol breached an express promise to compensate him for his services and for the assignment of his patent rights. Counts two and four allege a breach of an implied promise to compensate Terwilliger for his services and the assignment of his patent rights.

York filed a motion for summary judgment with this Court on October 8, 1993, asserting that the only written agreement between Terwilliger and Bristol is the Assignment and that this Assignment supersedes any supposed oral agreement which may have

1. Bristol Compressors was merged into York International on December 5, 1988. York assumed all obligations and liabilities of Bristol Compressors and Bristol Compressors continued to operate as the Bristol Compressors Division of York International.

2. Michael Young and Gerald Terwilliger had worked together and been friends since 1970 when they both worked at Eaton Corp. in Southfield, Michigan. Young joined Bristol in 1983 as Vice President of Engineering and Quality Assurance and was promoted to Chief Operating Officer in early 1984.

3. Bristol was having difficulty competing with their main competitor Copeland. Bristol's efforts to develop a product which could compete with the Copeland compressor had been unsuccessful. This led to Young's offer to Terwilliger.

arisen between Young and Terwilliger. York also claims that, as a matter of law there can be no implied contract given the Assignment.

Terwilliger counters by claiming a valid oral contract between himself and Bristol, promising a percentage of the profits from the compressor in exchange for his invention. Terwilliger also claims that he received no "consideration" for the Assignment and therefore the Assignment is void.

### ANALYSIS

To prevail on a motion for summary judgement under Federal Rule of Civil Procedure 56(c), the moving party must demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgement as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). As the moving party, York bears the burden of showing through evidence, which would be admissible at trial, that "a fair-minded jury could [not] return a verdict for [Terwilliger]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In considering York's motion, the Court views the underlying facts and all reasonable inferences drawn therefrom in the light most favorable to Terwilliger, the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987).

█ In approaching this motion for summary judgment, the Court agrees with the plaintiff that there was an express contract in this case. Beyond this elementary point the Court finds little merit in plaintiff's claim as to the nature of the contract. Terwilliger steadfastly asserts that the contract is an express oral contract between Young and himself. Terwilliger argues that this contract entitles him to one hundred million dollars of the profits received from the sale of his invention.

Terwilliger also suggests that this Court should construe the Assignment, and the "promises" made to Terwilliger by Young, in light of the relationship that existed between Terwilliger and Young. This Court is of the opinion that the Assignment is a valid written contract which speaks for itself and does not require parole evidence to be understood. The conversations between Young and Terwilliger, which give rise to the express and implied contract claims, took place in or around December of 1988. This is clearly before Terwilliger signed the Assignment in September of 1989.

█ When the Assignment was signed in 1989, it became the written embodiment of any agreement between Terwilliger and Bristol. If Terwilliger had any expectations or concerns, they should have been included in the Assignment. Terwilliger argues that this literal reading of the Assignment is flawed because he did not receive the "good and valuable consideration" recited in the Assignment. In support of this position Terwilliger cites *Hewett v. Samsonite Corp.,* 32 Colo. App. 150, 507 P.2d 1119 (1973).

In *Hewett* an employee assigned an invention to his employer for "good and valuable consideration." The Colorado Court of Appeals found that no payments had been made to the employee and that there was no case law to support the employer's contention that plaintiff's continued employment was sufficient consideration. Terwilliger would have this Court adopt the holding in *Hewett* and find that there was no consideration given for the Assignment.

This Court finds at least two grounds upon which to distinguish *Hewett* from the present case. The first distinguishing feature is that, in *Hewett,* there was no finding made by the trial court that there was any consideration whatsoever given to the employee for his assignment. Even the one dollar that was recited as having been paid was not given to the employee. The second, and most weighty factor which persuades this Court not to adopt *Hewett,* is two recent holdings by the United States Court of Appeals for the Federal Circuit to the effect that continued employment, salary and bonuses are valid consideration for an assignment. *See Shamrock Technologies Inc. v. Medical Sterilization Inc.,* 903 F.2d 789 (Fed.Cir.1990); *Diamond Scientific Co. v. Ambico, Inc.,* 848 F.2d 1220 (Fed.Cir.1988).

In fact there are several decisions from a variety of courts which hold that continued employment, salary and bonuses are valid consideration for an assignment. *Keller v. Bass Pro Shops,* 15 F.3d 122 (8th Cir.1994); *Eagle Comtronics Inc. v. Northeast Filter Co.,* 22 U.S.P.Q.2d 1134, 1991 WL 247551 (N.D.N.Y.1991); *see Nebco & Assoc. v. United States,* 23 Cl.Ct. 635 (1991). This Court finds these cases to be persuasive authority as applied to the current facts.

■ Terwilliger invented a compressor for Bristol at its request and using its resources. Terwilliger then voluntarily assigned all rights to the compressor to Bristol. This Assignment was in exchange for "valuable consideration" recited as being given by Bristol. While it is undisputed that Terwilliger was not paid a specified amount for this Assignment, it is also true that consideration can take many forms. Because there are many forms of consideration, it is the law in Virginia that "courts will not inquire into the adequacy of consideration, particularly when one or both of the values exchanged are variable or otherwise difficult to measure." *Jessee v. Smith,* 222 Va. 15, 278 S.E.2d 793, 795 (1981).

In the present case, the consideration for Terwilliger's Assignment was his continued employment and potential bonuses. Whether or not this consideration was adequate is not for this Court to say. "That one party rues the bargain he struck does not excuse his performance. 'Courts cannot relieve one of the consequences of a contract merely because it was unwise.'" *Jessee,* 278 S.E.2d at 795 (citing *Owens v. Owens,* 196 Va. 966, 86 S.E.2d 181, 186 (1955). Since there is no claim of fraud or distress to indicate that Terwilliger signed the Assignment other than voluntarily, this Court cannot and will not disregard the Assignment. Accordingly, this Court finds that the Assignment executed by Terwilliger on September 13, 1988, was a valid contract supported by consideration, *Shamrock Technologies Inc. v. Medical Sterilization Inc.,* 903 F.2d 789 (Fed.Cir.1990); *Diamond Scientific Co. v. Ambico, Inc.,* 848 F.2d 1220 (Fed.Cir.1988); *Eagle Comtronics Inc. v. Northeast Filter Co.,* 22 U.S.P.Q.2d

1134, 1991 WL 247551 (N.D.N.Y.1991), and binding upon the parties.

The implied contracts and the express oral contract which Terwilliger claims entitle him to recovery, if they ever existed, were supplanted by the Assignment. The fact that the Assignment is a valid written contract also prevents Terwilliger from recovering on claims of unjust enrichment or quantum meruit. *In re Stevenson Associates Inc.,* 777 F.2d 415, 421 (8th Cir.1985) and *Vollmar v. CSX Transp., Inc.,* 705 F.Supp. 1154, 1176 (E.D.Va.1989) (citing *Benefit Life Ins. Co. v. Union Nat'l Bank,* 776 F.2d 1174 (3rd Cir. 1985)).

### CONCLUSION

Terwilliger freely Assigned the rights to his invention to Bristol for "good and valuable" consideration. Whether Terwilliger considers that consideration to be "good and valuable", in hindsight, is not a relevant factor in this Court's decision. The Assignment is an unambiguous and explicit contract which details the respective rights of Terwilliger and Bristol. Like Faustus, Terwilliger must abide by the terms of the Assignment despite the fact that he is now dissatisfied with his end of the deal. Since Terwilliger was given "good and valuable" consideration for his Assignment, his claim against Bristol must fail. Accordingly, York's motion for summary judgement is granted.