**SCOTT SYSTEM, INC., a Colorado corporation, Plaintiff–Appellant,**

v.

**William C. SCOTT, III; Mark A. Scott; Innovative Brick Systems, an entity or association of unknown nature; and Does 1–10, Defendants–Appellees.**

**No. 98CA2402.**

Colorado Court of Appeals, Div. II.

Jan. 20, 2000.

Hamil Professional Corporation, J. Lawrence Hamil, Fred S. Furst, Denver, Colorado, for Plaintiff–Appellant.

Sims & Boster, C. Garold Sims, Frank W. Suyat, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge CRISWELL.*

Plaintiff, Scott System, Inc. (the corporation), appeals the summary judgment entered in favor of defendants, William C. Scott, III (William), Mark A. Scott (Mark), Innovative Brick Systems (IBS), and Does 1–10. We reverse and remand with directions.

The corporation's complaint alleged that, for more than 12 years, William and Mark, who are the sons of Samuel Scott, the president and sole stockholder of the corporation, were employed by the corporation. It also alleged that each served as a director and officer of the corporation. However, neither of the sons had a written employment agreement with the corporation.

The "thrust" of the complaint is that William and Mark left the corporation's employ and went to work for the defendant, IBS, which is in competition with the corporation. It was alleged that, in doing so, William and Mark made improper use of trade secrets and other confidential information to which they were privy as a result of their employment and their positions of directors and officers of the corporation. In addition, it was asserted that William had improperly refused to assign to the corporation patent rights to an invention that he had developed while he was an employee, a director, and an officer of the corporation, and that he was allowing IBS to make use of that invention to compete with the corporation.

Based upon these underlying allegations, the corporation asserted claims for breach of fiduciary duty, constructive fraud, breach of contract, unjust enrichment, violation of the Trade Secrets Act, unfair competition, interference with contracts and prospective contractual relationships, and civil conspiracy. However, not all of the claims were asserted against all of the defendants. The breach of contract, breach of fiduciary duty, and constructive fraud claims were asserted only against Mark and William.

To the extent that William's failure to assign the patent rights formed one of the predicates for the claims, it was alleged that such failure on William's part constituted the violation of an implied contract and the violation of the fiduciary duty owed by him as a result of his positions as a director and an officer of the corporation. However, the complaint did not allege and the later evidentiary materials would not support the inference that Mark took any active part in development of the invention at issue. Hence, to the extent that the corporation's claim that Mark violated an implied contract is based upon his failure to assign patent rights, that claim has no evidentiary support because he had no patent rights to assign.

The defendants moved to dismiss the claims based on constructive fraud, unjust enrichment, and interference with contracts and prospective constructive relationships. In addition, they moved for partial summary judgment, seeking dismissal of all claims that were based upon the failure to assign the patent rights to the corporation. After the submission of substantial evidentiary materials, the court granted defendants' motions, "except to the extent they relate to the use of

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, sec. 5(3),

and § 24–51–1105, C.R.S.1999.

trade secrets." After the court entered an order under C.R.C.P. 54(b) with respect to the claims dismissed, the corporation instituted this appeal from the resulting final judgment.

## I.

The corporation first argues that a genuine factual dispute exists with respect to the existence of an implied contract that required William to assign to it the patent rights to the invention. We agree.

Summary judgment is a drastic remedy, and such relief should be granted only if the moving party presents materials that demonstrate that no genuine controversy over a material factual issue exists and that the moving party is entitled to judgment as a matter of law. *Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988). Hence, the party against whom summary judgment is sought is entitled to every favorable inference that may be drawn from the historical facts. *Kaiser Foundation Health Plan v. Sharp,* 741 P.2d 714 (Colo.1987). Therefore, if differing factual inferences may be drawn from those facts, summary judgment cannot be granted. *O'Herron v. State Farm Mutual Automobile Insurance Co.,* 156 Colo. 164, 397 P.2d 227 (1964); *Sewell v. Public Service Co.,* 832 P.2d 994 (Colo.App.1991).

Further, because a court rendering summary judgment does not engage in fact finding, our review of the court's ruling is *de novo. Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995).

■■ Generally, an invention is the property of the inventor who conceived, developed, and perfected it. Hence, the mere fact that the inventor was employed by another at the time of the invention does not mean that that inventor is required to assign the patent rights to the employer. The right, if any, of an employer to inventions of its employee is determined primarily by the contract of employment. If, as here, the contract of employment does not contain an express provision respecting the subject, an employer is, nonetheless, not necessarily precluded from claiming a right to the invention.

■■ If an employee's job duties include the responsibility for inventing or for solving a particular problem that requires invention, any invention created by that employee during the performance of those responsibilities belongs to the employer. Hence, such an employee is bound to assign to the employer all rights to the invention. This is so because, under these circumstances, the employee has produced only that which he was employed to produce, and the courts will find an implied contract obligation to assign any rights to the employer. *United States v. Dubilier Condenser Corp.,* 289 U.S. 178, 53 S.Ct. 554, 77 L.Ed. 1114 (1933); *Solomons v. United States,* 137 U.S. 342, 26 Ct.Cl. 620, 11 S.Ct. 88, 34 L.Ed. 667 (1890); *Hewett v. Samsonite Corp.,* 32 Colo.App. 150, 507 P.2d 1119 (1973).

■■ On the other hand, if an employee is not employed to invent or to solve a particular problem, that employee owns the right to any invention made by the employee during the term of employment. However, under such circumstances, if the employer has contributed to the development of the invention, such as by paying for the employee's efforts, the employer has a "shop right" to use it free of charge and without liability for infringement. *United States v. Dubilier Condenser Corp., supra; Solomons v. United States, supra; Hewett v. Samsonite Corp., supra.*

■ Here, in opposition to defendants' motion, Samuel submitted an affidavit in which he asserted that William had been employed "to engage in research and development" and that "his job responsibilities at [the corporation] specifically included research and development of the [invention]." In a supplemental affidavit, Samuel stated that William's "research and development responsibilities in connection with the [invention] required him to exercise his mental and other inventive faculties on behalf of [the corporation]."

Further, Samuel also stated that the corporation had provided special compensation to William for his research and development work on the invention. Copies of three checks, evidencing such payment from the corporation to William, each of which was

written prior to the issuance of the patent, were presented.

Given this sworn testimony, a reasonable fact finder could find that, in addition to such other duties that William might have been assigned, he was specifically assigned the task of solving a particular problem and directed to use his inventive faculties to solve that problem, and that he did so by developing the invention. Such a fact finder could also conclude that William was paid special compensation for this work.

Should the fact finder reach these conclusions, then, the law would give William no right to the invention. Under such circumstances, all of the rights thereto would be vested in the corporation, and William would be required to execute an assignment of the patent to the invention as evidence of the corporation's ownership rights.

■ Defendants argue, however, that the trial court correctly determined that the admitted payments do not, as a matter of law, demonstrate that William was hired to invent because one of the three checks described the payment as a "royalty." Such payment, they say, is, by definition, for the use of something owned by another. We disagree.

The use of the term "royalty" on one of the three checks is, by itself, ambiguous. The use of that term does not preclude the inference that William was being paid additional compensation for his work on a specific project, nor does it necessarily demonstrate that William was being paid for plaintiff's use of a patent owned by William, especially in light of the fact that a patent had not issued at the time this check was written.

Moreover, if the term "royalty" is given the meaning ascribed to it by defendants, the use of that term is inconsistent with the contentions of *all* of the parties. If William's employment was for the purpose of inventing, he had no ownership rights in the invention and, therefore, no right to any royalty. If, on the other hand, the "shop right" rule applies, while William would own the invention, the corporation would have an irrevocable right to make use of it without payment to him. In neither case, therefore, would the payment of a "royalty" by the corporation be contemplated.

Our review of the materials presented to the trial court convinces us that a genuine factual dispute exists with respect to whether William was hired to invent or to solve a particular problem, and until this factual question is resolved, there can be no resolution of the issue whether William was under an implied contractual obligation to assign the patent rights to the corporation. *See Moore v. American Barmag Corp.*, 693 F.Supp. 399 (W.D.N.C.1988), *aff'd*, 902 F.2d 44 (Fed.Cir.1990)(whether an employee has been hired to invent or assigned a specific task is a question of fact).

## II.

■ Plaintiff also contends that a genuine factual dispute exists with respect to whether William had a fiduciary duty to assign the rights in the patent to the corporation. Again, we agree.

■ All officers and directors of a corporation owe a fiduciary duty to the corporation and to its stockholders. They are required to act in good faith and in a reasonable manner in the best interests of those parties. *Michaelson v. Michaelson*, 939 P.2d 835 (Colo.1997). Such a fiduciary duty obligates an officer or director to assign a patent to the corporation if the invention was developed while he or she was employed by the corporation and it is related to the corporation's business. *Lacy v. Rotating Productions Systems, Inc.*, 961 P.2d 1144 (Colo.App. 1998).

■ Contrary to defendants' assertion, the decision in *Lacy* was not based upon the nature of the particular responsibilities of the officer or director; it was based upon the general fiduciary responsibility owed by all who occupy such positions. Indeed, we know of no rule that states that a distinction in the degree of fiduciary obligation may be recognized based upon the degree of corporate involvement. It is the nature of the position, itself, and not the nature of the specific responsibilities that may be assumed, that gives rise to the obligation.

In Samuel's affidavit, he asserts that William held the position of vice president of production and that William accepted this position at a corporate meeting held in November 1996. Further, he asserts that William had also been a director of the corporation since 1994.

These sworn statements by Samuel create a factual dispute as to whether William occupied the position as an officer or director of the corporation, and therefore, whether he was obliged to assign any right he might have in the invention to the corporation. We conclude, therefore, that the court erred by granting defendants' motion for summary judgment with respect to the corporation's claim for William's breach of fiduciary duty.

### III.

The corporation next contends that the court erred by granting defendants' motion to dismiss the corporation's claims for constructive fraud, unjust enrichment, and interference with contract and prospective contractual relations. We agree.

### A.

■ The trial court dismissed the corporation's allegations of fraud because it concluded that they lacked the specificity required by C.R.C.P. 9(b). We conclude that the allegations were sufficiently specific.

In all averments of fraud, the circumstances constituting fraud or mistake shall be stated with particularity. We review a trial court's determination on a motion to dismiss *de novo* and, like the trial court, we must accept all averments of material fact contained in the complaint as true. *Fluid Technology, Inc. v. CVJ Axles, Inc.*, 964 P.2d 614 (Colo.App.1998).

■ Constructive fraud is defined as a breach of duty that the law declares fraudulent because of its tendency to deceive, violate confidence, or injure public interests. Neither actual dishonesty nor intent to deceive is an essential element of constructive fraud. Such fraud often arises if a special confidential or fiduciary relationship exists, which affords one party the power and means to take undue advantage of the other.

*See Security National Bank v. Peters, Writer & Christensen, Inc.*, 39 Colo.App. 344, 569 P.2d 875 (1977).

In its complaint, the corporation alleged that Mark and William were officers and directors who, due to their positions of trust, had access to confidential information and production techniques used in the manufacture of the corporation's products, including the product created by the invention. According to the complaint, defendants began manufacturing products that were the same or substantially similar to those of the corporation and which utilize production and fabrication processes that are the same or substantially similar to the corporation's confidential processes. Further, defendants allegedly misappropriated information about customers' identities, contracts, pricing, cost data, and suppliers and improperly used that information to compete with the corporation.

We conclude that these allegations contain sufficient particularity to satisfy the requirements of C.R.C.P. 9(b). *See Northwest Development, Inc. v. Dunn*, 29 Colo.App. 364, 483 P.2d 1361 (1971).

### B.

The trial court's dismissal of the corporation's claims for unjust enrichment and interference with prospective contractual relations was based upon its conclusion that William had no duty to assign any patent rights to the corporation. Because we have concluded that this issue cannot be resolved as a matter of law, these two claims must be reinstated.

To the extent that the claim for breach of contract asserted against Mark is based upon his failure to assign to the corporation the patent rights to the invention, the judgment dismissing that claim is affirmed. In all other respects, the judgment dismissing the claims is reversed, and the cause is remanded to the trial court for further proceedings consistent with the views contained in this opinion.

Judge MARQUEZ and Judge RULAND concur.