UNITY TELEPHONE CO.

AND

AMERICAN SURETY CO. OF NEW YORK.

*vs.*

DESIGN SERVICE CO., INC.

Waldo.   Opinion, June 12, 1964.

*Irving, Isaacson* by *Linnell and Choate,*
by *G. Curtis Webber,* for Plaintiff.

*Silsby and Silsby,*
by *Herbert L. Silsby, II,* for Defendant.

SITTING: WILLIAMSON, C. J., TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ. WEBBER, J., did not sit.

MARDEN, J.   This matter comes to us on cross-appeals.

As a Rural Electrification Administration project in 1955 the Unity Telephone Co. (Unity) proposed to convert its system to a dial system and as an element of it, contracted with L. W. Lander, Inc. (Lander) to construct two dial equipment buildings. The American Surety Co. (Surety) issued a performance bond in favor of Unity conditioned on Lander's proper execution of its contract. Unity also contracted with Design Service Co., Inc. (Design) to provide all engineering services for the project which included Design's obligation to supervise the Lander construction.

Lander failed to construct according to his contract and Unity filed a complaint against Lander for damages. The record does not indicate the disposition of this complaint, but before a complaint was filed by Unity against Design,

Surety agreed with Unity to indemnify Unity up to $4,500 provided that Unity should first exhaust its remedies against Design, and apply any recovery as a credit on the $4,500 for which Surety then obligated itself.

Unity complained against Design and in the course of hearing before jury, Design filed a motion that Surety be substituted as the real party-plaintiff in interest. The trial court denied this motion and following verdict in favor of Unity against Design in the amount of $5,244.72 Design moved for judgment *n.o.v.* and for a new trial, which motion was likewise denied by the trial court. Design's appeal was sustained and a new trial granted. *Unity Telephone Company* v. *Design Service Company of New York, Inc.,* 158 Me. 125, 179 A. (2nd) 804.

Upon this remand to the trial court, Surety was joined as plaintiff in an amended complaint, Design filed amended answer and it was stipulated that the case should be submitted to the Superior Court, jury waived. It was also stipulated:

> That a determination of the equities of the subrogated claim of Surety to the rights of Unity against Design should be made on the basis of the record of the evidence adduced at the prior trial.

> That at all relevant times Lander was financially irresponsible and a judgment recovered against it would have been worthless.

> That in the present action Surety stands subrogated to the rights of Unity against Design to the extent of $4,500, but that this stipulation is made without prejudice to Design's right to contend that such subrogated rights cannot succeed against it or to Surety's rights to pursue any direct cause of action it may have against Design.

> That Surety has paid Unity $4,500.

> That final judgment should be entered for Unity against Design in the amount of $744.72 (the dif-

ference between the amount Surety agreed to and did pay Unity, and the amount of the verdict against Design).

Upon consideration by the Superior Court, it was held that the law of contribution should be applied and that the loss to Unity of $5,244.72 should be equally borne by Design and Surety, and judgment was so rendered, reflecting the stipulation as to the $744.72.

Both Design and Surety appealed, claiming error in applying the theory of contribution rather than the theory of subrogation. Design contends that the contribution theory can stand only if Design and Surety are liable to each other, which they are not, and that under a subrogation theory the equities of the case do not justify shifting Surety's burden to Design.

Surety contends also that the theory of subrogation applies, but that the equities of the case require exoneration of Surety.

The controversy is founded upon disagreement as to the application of the principles of subrogation to the current facts. Expressed in factual terms, Design urges (1) that its breach of obligation to inspect and supervise Lander's work, whereby Lander would not have failed in the performance of his contract, did not contribute in any way to the damage occasioned Surety and (2) that Surety was paid for the risk which occurred. Surety argues that the only risk which it was compensated to take was the insolvency of its principal, that it could proceed against any person against which Unity could proceed, that Lander's insolvency is only fortuitous and that Design, whose negligent conduct contributed to Unity's damage, is responsible to it in full.

Preliminarily it is proper to say that consideration of the principles of contribution by the Superior Court were not unjustified in the light of the language in the reported case,

but neither Surety nor the relative issues of subrogation and contribution were before the court at that time, and at the present stage of the case both parties urge that the principles of contribution are not applicable, and that the principle of subrogation applies, but disagree upon its application.

The liability of Lander and Design to Unity was not joint but several. Lander and Design were not co-obligors to Unity. If it be accepted that both Lander and Design were obligated to Unity on a "common obligation," although stemming from separate contracts, — which is the basis of "contribution" *inter se*, 13 Am. Jur., Contribution § 9, Surety is not standing in Lander's shoes, is not substituted for Lander, but for Unity. We agree with counsel that the foundation for contribution is not present. See *Maryland Casualty Co.* v. *Gough*, 65 N. E. (2nd) 858, [14, 15] 866 (Ohio 1946) and *Southern Surety Co.* v. *Tessum*, 228 N. W. 326, [2] 329 (Minn. 1929).

In general terms and as applied to our present problem, subrogation is frequently referred to as a "doctrine of substitution" and may be defined as the substitution of one person in the place of another with reference to a lawful claim. It is a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it. It may arise from agreement between the parties or by operation of law where one person has been compelled to pay a debt which ought to have been paid by another, thus becoming entitled to exercise the remedies which the creditor possessed against the other. 50 Am. Jur., Subrogation, § 2. Legal subrogation follows as the legal consequence of the acts and relationship of the parties. Same, § 5. It is a machinery by which the equities of one. party are worked out through the legal rights of another. Same, § 6.

Owing to its equitable origin the doctrine is governed in its operation by principles of equity and the equities of the parties will be weighed and balanced, Same, § 11.

The right of a surety on subrogation against his principal is absolute but against third persons is conditional upon the equities involved. Same, § 111.

The statement that subrogation will not be enforced to the prejudice of other rights of equal or higher rank, Same, § 13, represents the weight of authority but there are cases *contra*. See comment note 137 A. L. R. 700, 706.

This doctrine as expressed in the general rule that an insurer, on paying a loss, is subrogated in a corresponding amount to the assured's right of action against any other person responsible for the loss, has been recognized in *Leavitt* v. *Canadian Pacific Railway Company*, 90 Me. 153, 160, 37 A. 886, and in *Home Insurance Co.* v. *Bishop*, 140 Me. 72, 78, 34 A. (2nd) 22, and instances of a liability or collision insurer, having paid off a claimant, proceeding in subrogation against a third party are common.

We are aware of no case which has reached this court involving the subrogation rights of a compensated surety against a third party, and American decisions divide themselves into two categories, — each with conflicting rationale, — as might be expected where the several courts are charged with weighing equities.

> 1. Cases establishing a majority rule that where recovery by the surety depends solely upon the balance of the equities between the surety and a third party, surety, to prevail, must establish a "superior equity."
>
> > Where equities are considered equal no recovery is allowed. Characteristic of such case is one where the surety on a fidelity bond indemnifies an employer for misuse of funds by an employee, its

principal, and seeks by subrogation to recover from a bank or other endorser, which in good faith and without negligence has cashed checks forged by the defaulting employee. See *National Surety Corporation* v. *Edwards House Co., et al.*, 4 So. (2nd) 340 (Miss. 1941) ; *Meyers* v. *Bank of America, N. T. & S. Association*, 77 P. (2nd) 1084, [8] 1089 (Cal. Sup. Ct. 1938) (comment on lack of privity between surety and third party) ; *United States Fidelity & Guaranty Co.* v. *First National Bank in Dallas, Texas, et al.*, 172 F. (2nd) 258, [15] 263 (Fifth CCA 1949) (comment on obligee's election to recover from surety) ; *American Surety Co. of New York* v. *Multnomah County*, 138 P. (2nd) 597, [14-16] 609 (Ore. 1943) and see *National Surety Corporation* v. *Allen-Codell Co., et al.*, 70 F. Supp. 189 where inequitable conduct of surety precluded "superior equity."

Into this category falls a line of cases, contributing greatly to numerical strength of the majority rule, which deny subrogation rights to a "paid" surety where the third party defendant, though legally liable, is not guilty of negligence or of an active wrong. These cases are characterized as standing for the "compensated surety defense"[1] and seem to have been led by *American Bonding Co. of Baltimore* v. *First Nat. Bank of Covington, et al.*, 85 S. W. 190 (Ky. 1905), followed by *Louisville Trust Co.* v. *Royal Indemnity Co.*, 20 S. W. (2nd) 71 (Ky. 1929) and recognized in *Security Fence Company* v. *Manchester Federal Savings & Loan Association*, 136 A. (2nd) 910, [2-4] 912 (N. H. 1957) and *Bank of Fort Mill* v. *Lawyers*

---

[1] See "The End of the 'Compensated Surety Defense' in Subrogation Cases" by Bunge & Metge in 22 Insurance Counsel Journal 453 (1955).

*Title Insurance Corporation,* 268 F. (2nd) 313, [1, 2] 315 (Fourth CCA 1959).

There are, however, cases to the contrary and see *National Surety Co.* v. *National City Bank,* 172 N. Y. S. 413 (Sup. Ct. A.D. 1918) and *Liberty Mut. Ins. Co.* v. *First National Bank in Dallas,* 245 S. W. (2nd) 237 (Texas 1951) wherein the Supreme Court of Texas disagrees with the Circuit Court of Appeals in *Fidelity, supra,* in a case involving similar facts and the same defendant.

As between an innocent surety and a wrong doing (negligent) third party, the equity of the surety is superior and the recovery is allowed. See *Dantzler Lumber & Export Co.* v. *Columbia Gas Co.,* 156 So. 116 (Fla. 1934) ; *National Surety Corporation* v. *Lybrand,* 9 N. Y. S. (2nd) 554 (Sup. Ct. A.D. 1939) ; *Martin* v. *Federal Surety Co.,* 58 F. (2nd) 79 (Eighth CCA 1932) and *Security Fence Company, supra.*

See also restatement, Security, § 141, Subrogation and subparagraph (c) with comment.

2.   Where, although equities between the surety and the third party may be considered equal, the third party has a contractual obligation to the obligee on the bond, as, to use the same type of illustration, where the third party is a bank which, in cashing checks forged by a defaulting employee, has guaranteed prior endorsements or is made responsible by a negotiable instrument statute.   Here it has been held that the surety may recover in subrogation on the contractual obligation of the third party to the obligee on the bond.   See *Standard Acc. Ins. Co.* v. *Pellecchia, et al.,* 104 A (2nd) 288 (N. J. 1954), in which the late Chief Justice Vanderbilt discusses subrogation at length and at p. 299

directs his comment to the rights of the "paid" and subrogated surety. Also *Liberty Mut. Ins. Co., supra,* and *State, for Use of National Surety Corp.* v. *Malvaney, et al.,* 72 So. (2nd) 424 (Miss. 1954), which case is factually close to the one at bar.

If it be considered that the existence of a contractual duty owed by the third party to the obligee on the bond creates "equities" in favor of the obligee, — and surety, the general rule remains inviolate.

In considering equities in the present case a sentence on p. 136 of the *Unity* case in 158 Maine, which reads "In sum and in substance, we are constrained to state that as a result of the agreement between the American Surety Company and Unity a serious problem of inequity and injustice has been created and in its creation, Unity is not without being subject to censure" ostensibly has bearing. However, the issue before the court at that time was upon the propriety of requiring Surety to come into the case openly as a party-plaintiff and the reference to inequity as applied to Unity was not made in a valuation of its position against Design, but as a party to the arrangement with Surety whereby Surety was proceeding as a concealed plaintiff-in-interest.

In the case before us Surety paid off Unity for the default of its principal, Lander, and became subrogated to Unity's rights against Lander and any third person obligated to Unity. Whether we apply the doctrine of subrogation by weighing equities between Unity (and Surety) and Design or to the contractual obligation of Design to Unity the result is the same. In equity, Unity (and Surety) are innocent, by jury determination Design was guilty of negligently failing to perform the necessary inspection and supervision of the Lander contract, and Unity-Surety equities are superior to those of Design. If the right of Surety

on subrogation is to rest upon the presence or absence of a contractual obligation owed by Design to Unity, that presence and liability under it has been determined.

Contrary to Design's contention that its breach of contractual duty did not contribute to Unity's damage, a jury has found otherwise. Design shares the responsibility of Lander's default and thus contributed to the cause of Surety's liability. While the finding of legal "fault" in Design's conduct removes the applicability of the "paid surety defense," — were we inclined to consider it, *Pellecchia* in [15] at p. 302 points out that "(t)his argument loses sight of two fundamental facts; first, that even if the surety recovers against the third party on subrogation it still has been put to the expense of paying agent's commissions on the writing of its bond, to the necessity of investigating the insured's claim and of settling or litigating it, and, second, that the amounts of recoveries by subrogation are taken into consideration in arriving at the amount of premiums to be charged for surety bonds." We adopt *Pellecchia.*

Surety is entitled, under the doctrine of subrogation, to recover from Design $4,500.

It does not become necessary to discuss point 3 of Surety's appeal.

*As to Design Service Co., Inc. appeal sustained. As to American Surety Co. New York appeal sustained.*

*Case remanded to the Superior Court for entry of judgment in favor of American Surety Co. of New York for $4,500.00 and for entry of judgment in favor of Unity Telephone Co. for $744.72.*