472 P.2d 721 (1970)
R. R. RUTHERFORD, Plaintiff in Error,
v.
G. L. SCARBOROUGH, Defendant in Error.
No. 70-215. (Supreme Court No. 23349.)
Colorado Court of Appeals, Div. II.
June 30, 1970.
*722 Gordon, Lefferdink & Legg, Lamar, for plaintiff in error.
Schmidt & Schmidt, Springfield, for defendant in error.
Selected for Official Publication.
COYTE, Judge.
This case was originally filed in the Supreme Court of the State of Colorado, and was subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
The parties appear in reverse order from their appearance at trial but shall be referred to as they appeared below.
Defendant had extensive farm holdings in the Springfield area in Baca County. In 1957 he leased 2,500 acres of his dry farm land to plaintiff. According to the terms of the lease, plaintiff was to deliver one-third of the harvested crop in 1958 as rental for the land. At the end of 1958 plaintiff had the option of renewing the lease for a five-year period and, if he did so, he was to deliver one-fourth of the crops annually as rental for the land. Defendant was to furnish the necessary equipment to farm the land for which plaintiff agreed to pay thirty cents per acre for its use. At the end of the first year's operation plaintiff renewed the lease, although he ceased using the equipment at that time.
In 1962 defendant placed his entire farm acreage, including the 2,500 acres leased to plaintiff, under the 1962 wheat stabilization programs in order to receive certain subsidy and wheat diversion payments. Under these programs defendant received a total of $17,013.11 in payment. Subsequently, defendant paid plaintiff $7,077.23, which was three-fourths of that portion of the government payments attributable to the land leased by plaintiff.
In 1963 defendant again placed his entire farm acreage, including the 2,500 acres leased to plaintiff, in the same government programs. Again defendant received both subsidy and diversion payments for his entire farm land including the acres leased by plaintiff. This time, however, defendant refused to pay plaintiff any portion of the government payments attributable to those acres under lease to plaintiff. Plaintiff then initiated this suit to recover that part of the government payments attributable *723 to the acreage leased by him. Defendant in his answer denied that plaintiff was entitled to any portion of the government payments and counterclaimed for damages allegedly sustained as a result of plaintiff's negligent misuse of the farm machinery supplied him.
Trial was to the court, which found that in 1963 defendant received government payments totaling $7,925.32, which were attributable to the 2,500 acres of land leased to plaintiff; and that the parties had by the terms of the lease intended to divide all profits derived from the 2,500 acres in the ratio of one-fourth to defendant and three-fourths to plaintiff. The court, therefore, held that plaintiff was entitled to three-fourths of the government payments, or $5,943.99, attributable to the leased acres. On defendant's counterclaim the court found that there was not sufficient evidence presented to support the claim and therefore dismissed it.
Defendant contends that under the terms of the lease plaintiff was entitled to three-fourths of the crops produced on the land, but was not entitled to any other income derived from the land. Defendant takes the position that what was not specifically granted by the lease was reserved to the lessor. We disagree. During the term of the lease a tenant is normally entitled to full possession of the premises, even to the exclusion of his landlord. Radinsky v. Weaver, Colo., 460 P.2d 218. Unless specifically reserved by the terms of the lease, all benefits normally derived from the use of the land are granted to the lessee. In the instant case there was testimony that plaintiff plowed under some of the volunteer and planted growing wheat, so as to make the producing acreage comply with government requirements. He testified that he had requested permission from defendant to plow up the non-compliance wheat acreage so as to be eligible to receive the government payments and that defendant had agreed to this arrangement. We can find no reason for not dividing the diversion and subsidy payments in the same ratio as the wheat actually produced was divided. This is particularly so when some of the growing wheat on the land leased to the tenant had to be plowed under in order to put the leased land under the government wheat allotment into compliance with the government program.
The trial court determined that the parties intended to divide all proceeds derived from the land in the ratio of one-fourth to defendant and three-fourths to plaintiff. The fact that in 1962 the parties had done just that is persuasive evidence that this was their interpretation of the lease. Buckhorn Plaster Co. v. Consolidated Plaster Co., 47 Colo. 516, 108 P. 27. The trial court's finding on this issue is consistent with both the evidence presented and the terms of the lease itself. Where there is evidence in the record to support the judgment of the trial court, it will not be disturbed on review. People ex rel. Dunbar v. Lee Optical Co., Colo, 452 P.2d 21.
The second issue raised by defendant concerns his counterclaim for damages allegedly resulting from plaintiff's negligent use of equipment in the first year of operations.
On appeal, defendant argues that plaintiff was bailee of this equipment and that all he was required to prove was delivery of the equipment to plaintiff and its return in a damaged condition. In the trial court defendant claimed relief on the theory of plaintiff's negligence, not bailment. At this point it is too late to seek recovery on a theory radically different from the one used below. Colorado Investment & Realty Co. v. Riverview Drainage Dist., 83 Colo. 468, 266 P. 501. Since defendant sought relief on a theory of negligence below, he is confined to that theory on review. Carlberg v. Willmott, 87 Colo. 374, 287 P. 863.
The evidence disclosed that both parties made use of the equipment and based upon the conflicting evidence presented in trial the court below denied *724 defendant's claim. As was stated in Whatley v. Wood, 157 Colo. 552, 404 P.2d 537:
"* * * On writ of error, the sole inquiry on that issue (negligence) is whether there is sufficient evidence in the record to sustain the trial court's findings. If there is sufficient evidence, we are bound by the trial court's determination even though it is possible for reasonable men to arrive at a different conclusion based on the same facts. Hawkins v. Elston, 58 Colo. 400, 146 P. 254 (1915); Dohner v. Union Central Life Insurance Co., 109 Colo. 35, 121 P.2d 661 (1942)."
Judgment is affirmed.
DUFFORD and PIERCE, JJ., concur.