ARVADA HARDWOOD FLOOR COMPANY, a Colorado corporation, Plaintiff-Appellee,

v.

Frank JAMES, and United Bank of Denver, Defendants,

and

Central Bank of Denver, a banking corporation, Defendant-Appellant,

and

American Employers Insurance Company, Defendant and Cross-Claimant-Appellee.

No. 80CA0055.

Colorado Court of Appeals, Div. I.

Nov. 19, 1981.

Sonheim & Helm, Darrel L. Matteson, Arvada, for plaintiff-appellee.

Paul V. Rupp, Denver, for defendant-appellant.

Weller, Friedrich, Hickisch & Hazlitt, Andrew J. Friedrich, Denver, for defendant and cross-claimant-appellee.

COYTE, Judge.

Defendant Central Bank of Denver (Central) appeals the judgment of the trial court entered against it. We affirm.

The evidence revealed that plaintiff, Arvada Hardwood Floor Co., (Arvada) was required to withhold taxes from its employees' paychecks and forward the funds to the Internal Revenue Service. To accomplish this, Arvada would draft a check drawn on the United Bank of Denver for the withheld sums made payable to Colorado National Bank. This check, together with an authorizing coupon, would be delivered to the Colorado National Bank which would then forward the funds to the IRS. Frank James, an employee of Arvada, suggested that it would be more convenient to pay the withheld funds to Central for forwarding to the IRS.

Thereafter, on eight occasions, Arvada drafted the check payable to Central and directed James, a part-time accountant, to deliver it and the coupon to Central. Although Arvada did not have an account at Central, James was a longtime customer there and assured Arvada that he would deliver the checks as directed. James, however, had Central deposit these checks totalling $24,402 into his own account. These deposits continued for two months, during which time Central would deposit the checks and forward them to the drawee, United Bank, who would then charge Arvada's account.

Eventually, Arvada asked James to provide it with tax receipts evidencing the deposits. James obtained blank receipts from Central, filled them out and gave them to Arvada. When Arvada brought the receipts to Central, however, Central informed Arvada that the receipts had not been prepared by it and that the checks had been deposited into James' account.

Arvada carried insurance with American Employers Insurance Company (American) to protect against employee theft. When Arvada discovered the loss it filed a claim with American. American, however, contended that Frank James was an independent contractor rather than an employee of Arvada and, thus, was not covered by Arvada's insurance. Arvada and American agreed that American would pay Arvada $10,000. In consideration, Arvada assigned to American its right to $10,000 of any amount that could be recovered from Central.

Arvada and American then brought suit against Central to recover the $24,402.55 which it had deposited to James' account in the Bank.

The trial court found in favor of Arvada Hardwood in the amount of $14,402.55 and American in the sum of $10,000.

## I

Central contends that under § 4–3–111, C.R.S.1973, it was entitled to treat checks made payable to Central as bearer paper and, thus, was entitled to follow the directions of James to deposit the Arvada withholding checks into his own account. We disagree.

The section relied upon by Central states: "An instrument is payable to bearer when by its terms it is payable to:

(a) Bearer or the order of bearer; or

(b) A specified person or bearer; or

(c) 'Cash' or the order of 'cash', or any other indication which does not purport to designate a specific payee."

By the plain meaning of this statutory language, when a drawer of a check names a specific payee, the check becomes order rather than bearer paper. If a bank chooses to treat such checks as bearer paper, it acts at its own peril and may be liable for negligence if it misapplies the proceeds of the check. See *Federal Savings & Loan Insurance Co. v. Kearney Trust Co.*, 151 F.2d 720 (8th Cir. 1945); *Wright v. Mechanics Bank*, 466 S.W.2d 174 (Mo.App. 1971); *Fidelity & Casualty Co. v. Hellenic Bank Trust Co.*, 181 Misc. 40, 45 N.Y.S.2d 43, *aff'd*, 181 Misc. 44, 47 N.Y.S.2d 295 (1943).

The trial court found that Central was liable for negligence in treating checks made payable to itself as bearer paper and

depositing them into James' account. On appeal, the only question for this court is whether there is sufficient evidence on the issue of negligence to sustain the trial court's finding. *Rutherford v. Scarborough*, 28 Colo.App. 352, 472 P.2d 721 (1970). Under the standard set forth in § 4–3–110 and 111, C.R.S.1973, the evidence in the record supports the finding of the trial court that Central was liable for negligence when, without authorization from the drawer, it took the proceeds of a check payable to itself and paid it to another.

## II

Central also contends that under the Uniform Fiduciaries' Act, § 15–1–111, C.R.S.1973, it was not responsible to Arvada or American for the wrongful payment to Frank James. We disagree. This section states:

> "If a fiduciary makes a deposit in a bank to his personal credit ... or if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary by that action; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith."

This section does not apply as James did not hold such funds as a fiduciary and was not empowered to endorse the checks. His only duty was to deliver the checks to Central. *See Salsman v. National Community Bank*, 102 N.J.Super. 482, 246 A.2d 162 (1968).

## III

Central further contends that the court should apply the compensated surety defense to deny recovery by American. We disagree. Under the compensated surety doctrine, an insurer will be denied subrogation against a person who, although legally liable to the insured, was not guilty of fault or other wrongdoing.

This doctrine has been neither accepted nor rejected by this state. However, we need not rule on the applicability of this doctrine, since the trial court found that Central was negligent. This finding disposes of the argument as Central may not claim the benefit of the compensated surety defense when it was found to be at fault. *See Unity Telephone Co. v. Design Service Co.*, 160 Me. 188, 201 A.2d 177 (1964).

## IV

Central next contends that Arvada's assignment of its claim to American Employers constitutes champerty and maintenance and thus is void and against public policy. We disagree.

When American paid Arvada $10,000 under its policy of insurance, it was subrogated to that extent and could proceed directly against Central. The assignment gave it only an additional right to recover against Central. Such an assignment was a valid contractual arrangement between the parties and merely reinforced American's pre-existing subrogation right. *See Liberty Mutual Insurance Co. v. Thunderbird Bank*, 113 Ariz. 375, 555 P.2d 333 (1976).

We have considered defendant's other contentions of error and find them to be without merit.

Judgment affirmed.

PIERCE and SMITH, JJ., concur.