UTICA MUTUAL INSURANCE CO.

v.

ST. PAUL FIRE & MARINE
INSURANCE CO.

Supreme Judicial Court of Maine.

Argued Sept. 9, 1983.

Decided Dec. 6, 1983.

Edward Hudon (orally), Brunswick, Merle C. Rideout, Jr., Portland, for plaintiff.

Preti, Flaherty & Beliveau, Jonathan S. Piper (orally), John J. Flaherty, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ.

VIOLETTE, Justice.

The Utica Mutual Insurance Co. (Utica) brought suit in the Superior Court, Cumberland County, against the St. Paul Fire & Marine Insurance Co. (St. Paul), seeking restitution, indemnification, and a declaratory judgment in connection with an insurance claim paid by Utica but allegedly owed by St. Paul. Based on the pleadings and the deposition testimony of two witnesses, each party moved for summary judgment. The court issued an order and decision granting St. Paul's motion and dismissing the complaint. Utica brought this appeal from the order. Because we find there exists a genuine issue as to a material fact, we vacate the summary judgment.

I.

Utica is the liability insurer, under an "errors and omissions" policy, of the insurance office of David L. Pence in Springvale, Maine. Pence is a "multi-lines insurance agent," selling and underwriting fire and casualty insurance policies for a number of insurance companies, including St. Paul.

Since at least 1966 Pence has been writing St. Paul fire insurance policies to cover the property of its customers Leo and Georgette Fortier located in Sanford, Maine. It was Pence's practice to issue renewals of

the Fortiers' insurance, as well as bills for the premiums, directly to the Fortiers from his Springvale office, thereby eliminating the need for any direct communication between St. Paul and the Fortiers. After receiving the renewal policy and the bill from Pence, the Fortiers mailed their premium payments back to Pence's office. At Pence's deposition he testified as to his doubt that the Fortiers knew that St. Paul was their insurer.

The St. Paul policy issued to the Fortiers on March 18, 1979 bore an expiration date of March 18, 1980. Due to the mismanagement of some office files, Pence failed to issue a renewal policy for the Fortiers' property to extend the fire insurance coverage after the March 18, 1980 expiration date. On February 7, 1981 a fire on the ground floor of the Fortiers' property caused over $59,000 in damage. The following day Pence discovered that he had neglected to renew the fire insurance coverage. After St. Paul refused to pay for the Fortiers' loss, pointing to the expiration date of the last issued policy, Pence turned to Utica, his own liability insurer. Utica determined that Pence's negligence had caused the Fortiers' coverage to lapse, and paid the Fortiers $58,317.08 for their loss.[1]

As part of the consideration for Utica's satisfaction of their claim, the Fortiers signed a "Release, Indemnity Agreement and Assignment," purporting to give Utica an assignment of all their potential claims against third parties arising out of the fire loss.[2] Relying on this document, Utica brought suit against St. Paul, arguing that despite the expiration date on the face of the Fortiers' fire insurance policy, an effective contract for insurance existed between the Fortiers and St. Paul, to be inferred from the course of dealings between the insurer, its agent Pence, and the insured over a twenty-year period. Thus, Utica alleged, St. Paul was estopped to deny the existence of the implied contract, and was liable to pay for the Fortiers' loss.

## II.

Utica asserts that its right to recover from St. Paul may be viewed either as an equitable right to be subrogated to the Fortiers' claim, or, alternatively, as a legal right to proceed on the assignment it purported to take from the Fortiers. We find it unnecessary to decide how the transfer should be characterized, and note only that if Utica has a valid claim under either a subrogation or an assignment theory, its right to recovery may ultimately rest on whether an implied contract existed between the Fortiers and St. Paul at the time of the fire.

The Superior Court did not consider Utica's argument that it took a valid assignment of the Fortiers' claim, but focused only on the "fairness" of allowing Utica to avoid paying for Pence's negligent omission by asserting a right to be subrogated to the Fortiers' claim against St. Paul:

> Balancing the equities, the Court finds that Utica may not pass on a loss that it duly insured and for which it received premiums to one who did not actively participate in causing the loss. To permit

---

1. Additionally, the Fortiers received $1000 directly from Pence, as that was the deductible on Pence's liability insurance with Utica.

2. Paragraphs 8 and 9 of this document provide, in pertinent part:

   Releasors named in Part I above [i.e., Leo A. Fortier and Georgette L. Fortier, individually and as Alexson's Cleaners and Northeast Bank of Sanford] and each of them with reference to the fire loss recited and for the consideration named in said Part I [$59,-317.08], hereby assign to the Releasees [i.e., David L. Pence, individually and the Insurance Office/D.L. Pence, all of Sanford, Maine

and Utica Mutual Insurance of Utica, New York] all claims, causes of action, demands or other legal or equitable rights against third parties, not parties to this Release which they now possess.

   . . . .

   Particularly contemplated in addition to all other third parties are claims and demands of every description against The St. Paul Fire and Marine Insurance Company (and related group), St. Paul, Minnesota and Springfield, Massachusetts or any subsidiary or part thereof.

subrogation would allow Utica to avoid its duty undertaken as a liability insurer. Based on this reasoning, the Superior Court granted St. Paul's motion for summary judgment against Utica.

■ We find the entry of summary judgment for St. Paul to have been premature and therefore erroneous. In balancing the equities involved, under the principle of subrogation, the court failed to give proper consideration to Utica's assertion that an implied contract for insurance was in effect between St. Paul and the Fortiers at the time of the fire. Based on Pence's deposition testimony concerning his office's twenty-year practice of renewing the Fortiers' policy automatically each year, as well as his testimony that in the past St. Paul had allowed Pence to backdate policies which had lapsed because of Pence's negligent failure to renew them on time, we find the existence of an implied contract cannot be said to be conclusively precluded. If such a contract did exist, then Pence's clerical error would have been immaterial, and there would have been no liability on Pence's part for which Utica should justly be held responsible. In such a case, a factfinder could conclude that subrogating Utica to the rights of the Fortiers against St. Paul would effectuate the equitable goal of "compel[ling] the ultimate discharge of an obligation by him who in good conscience ought to pay it." *Unity Telephone Co. v. Design Service Co.,* 160 Me. 188, 193, 201 A.2d 177, 179 (1964). *See also North East Insurance Co. v. Concord General Mutual Insurance Co.,* 433 A.2d 715, 719 (Me.1981).

■ The validity of Utica's alternative theory of recovery, that it took a valid assignment of the Fortiers' prospective claim against St. Paul by paying for the Fortiers' loss, also may ultimately depend on a finding that an implied contract existed. Under the doctrine of assignment, after the fire loss had occurred, the Fortiers were free to sell to a third party whatever claim they may have had against their insurer. *Warner v. Narragansett Mutual Fire Insurance Co.,* 111 Me. 590, 90 A. 706, 707 (1914); *National Exchange Bank of Boston v. McLoon,* 73 Me. 498, 504 (1882). Whether an implied contract actually existed, so that the Fortiers had a viable claim against St. Paul which they validly assigned to Utica, is a question of fact, to be decided only after consideration of all the evidence.

### III.

■ We have repeatedly cautioned that "summary judgment is an extreme remedy which should be cautiously invoked." *Bendix v. Boston Old Colony Insurance Co.,* 417 A.2d 453, 455 (Me.1980); *Wallingford v. Butcher,* 413 A.2d 162, 165 (Me.1980); *Haskell v. Planning Board of Yarmouth,* 388 A.2d 100, 102 (Me.1978); *Cardinali v. Planning Board of Lebanon,* 373 A.2d 251, 255 (Me.1977). It is specifically reserved for those occasions on which " 'the facts before the court so conclusively preclude . . . [a party's] recovery' that a judgment in favor of the other party is the only possible result." *Wallingford v. Butcher,* 413 A.2d at 165, citing *Cardinali v. Planning Board of Lebanon,* 373 A.2d at 255.

Utica argues that the course of dealings between St. Paul, Pence, and the Fortiers over a twenty-year period created an implied contract to provide fire insurance which remained in effect despite the expiration date on the face of the last issued policy. The issue of the existence of the implied contract leaves unresolved a question of material fact, making summary judgment inappropriate. In *Wallingford v. Butcher,* we stated:

> We find it difficult to imagine a real-life situation in which a "course of dealing" between the parties can upon motion for summary judgment be properly postured to eliminate issues of fact. An evidentiary exploration of the "course of dealing" must necessarily involve all communications written or oral as well as the actions of the parties in reliance thereon.

413 A.2d at 165. Whether an implied contract existed between the Fortiers and St. Paul on the date of the fire must be decided on the basis of all available evidence.

The entry is

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.