[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action was instituted by writ, summons and complaint that were made returnable to this court on June 3, 1980. The writ of summons which accompanied the complaint of the plaintiff Howard Gianotti described the defendants as Frank Barucci, d/b/a Miami Plumbing Heating (44 Miami Street, East Haven, CT), Robert DiLella d/b/a Bob's Plumbing Heating (44 Miami Street, East Haven) and New Haven Water Co. The revised complaint, inter alia, alleged that in June 1978 the plaintiff, then in partnership with Anthony J. Cuomo as Cuomo Associates were engaged in the construction of an apartment housing project in East Haven known as "Woodview" and that the plaintiff through the partnership had contracted with A. Prete Sons (Prete) for the construction of Woodview in accordance with plans and specifications provided by the plaintiff. It further alleged that Prete "contracted with defendant Frank P. Barucci d/b/a Miami Plumbing and Heating Inc. on April 18, 1977 to do the necessary plumbing, heating, water connections . . . which contract was on or about December 27, 1977 assigned to Robert G. DiLella, d/b/a Bob's Plumbing and Heating." The action sought money damages arising out of the alleged negligence of the defendants in connection with certain work and services involved in the construction of the Woodview housing project in East Haven.
On November 30, 1980 a default for failure to appear was entered against Frank Barucci d/b/a Miami Plumbing Heating. On March 16, 1981, the case was dismissed as to Robert DiLella, d/b/a Bob's Plumbing Heating because he was not a Connecticut resident when the action was instituted and was not properly served with process instituting the action in Connecticut. On March 26, 1984, the case was referred to the Honorable Philip R. Pastore, a State Trial Referee for hearing and judgment. During the trial before CT Page 5798 Judge Pastore the case was settled as against the New Haven Water Co. (which had by that time became known as The South Central Regional Water Authority) and it was withdrawn as against that defendant on September 20, 1984. The withdrawal was signed by Attorney Leroy Jones, who represented the plaintiff at that time. Thereafter, on September 24, 1984, Judge Pastore caused written notice to be mailed by his secretary to Frank Barucci at his last known address of 44 Miami Street, East Haven indicating that he had been defaulted on November 3, 1980 for failing to appear and that the court was going to hold a hearing in damages on October 2, 1984, "as for as he was concerned in this action." On October 2, 1984 Attorney Louise LaMontagne appeared for Barucci and participated in that hearing. Barucci was not present at that time. At the end of that hearing Judge Pastore entered judgment in favor of the plaintiff in the amount of $41,845.75. Later that day Judge Pastore filed a written memorandum in the clerk's office setting out therein the award in favor of the plaintiff against Barucci in the amount of $41,845.75 in damages and taxable costs.
On September 10, 1985, plaintiff's counsel Leroy Jones filed an application for examination of judgment debtor with an order for such an examination and notice dated September 27, 1985 which required Barucci to appear before a Judge of the Superior Court on November 1, 1985. On that latter date Barucci appeared in court with his attorney and was examined under oath.
In May 1989 Leroy Jones was given permission by the court to withdraw his appearance for the plaintiff as the latter had obtained new counsel to represent him. That new counsel is plaintiff's present counsel. In 1989 the plaintiff again applied for an examination of Barucci as a judgment debtor. After order and notice another such examination was held at which the defendant appeared was examined, and was represented by counsel. An execution issued thereafter was returned wholly unsatisfied except for the discovery of $32.79 leaving a balance of $41,812.96 on the 1984 judgment debt.
The plaintiff then sought to attach Barucci's Individual Retirement Account (IRA) which Barucci claimed was by law exempt from execution pursuant to G.S. 52-352a(M). The court (D. Dorsey, J.) denied his motion for exemption from execution ruling that the corpus of Barucci's IRA was not exempt from execution as claimed.
1. Thereafter, on January 4, 1991, the defendant filed his motion to reopen the judgment of October 2, 1984 together with his supporting affidavit.
2. In that motion he maintains that that judgment ("in the total amount of $41,845.75) "was obtained by fraud and [that he] CT Page 5799 did otherwise fail to appear and defend for the following reasons:
a. In that at all times mentioned in the original and amended Complaint, a corporation known as Miami Plumbing Heating Contractors, Inc. undertook the contract between A. Prete Sons, the Plaintiff's joint venture known as Prete-Cuomo Associates' and others, in behalf of Cuomo Associates or the Plaintiff;
b. That the Plaintiff, Howard Gianotti, was fully aware, at all times, that the true party in interest was Miami Plumbing 
Heating Contractors, Inc. and not Frank Barucci, individually;
c. That, in fact, the Plaintiff, Howard Gianotti, and his partnership, Cuomo Associates, instituted suit against this corporation in other actions (Cuomo Associates v. Miami Plumbing 
Heating Contractors, Inc., Docket #81-0189062S) and (Cuomo Associates v. Robert DiLella, DBA, et als. Docket #80-0183078) said corporation being known and identified as Miami Plumbing 
Heating Contractors, Inc.;
d. That since the responsible party was Miami Plumbing 
Heating Contractors, Inc., Frank Barucci was led to believe by the Plaintiff and his attorney that the corporation or another party was the proper subject of this litigation and not him individually;
e. That at all times the Plaintiff and the Plaintiff's attorney was fully aware that the true party was Miami Plumbing 
Heating Contractors, Inc. and that, in fact, other litigation had been instituted against said corporation;
f. That in spite of this, the Plaintiff fraudulently testified at the time of trial that he was individually doing business as Miami Plumbing Heating Contractors, Inc.;
g. That it was represented to him by Plaintiff and his attorney that the true subject of this litigation was the New Haven Water Company and its successor, the Regional Water Authority, and not him individually, or Miami Plumbing Heating Contractors, Inc.;
h. That it was represented to him by Plaintiff and his attorney that he did not have to be concerned about asserting a defense to this matter;
i. That at all times he held himself ready, willing and able to come in to trial and testify as to the part played in this litigation by Miami Plumbing Heating Contractors, Inc., and the causation of the Plaintiffs damages; CT Page 5800
j. That he did not appear at trial or defend himself because of said representations made by Plaintiff and/or Plaintiffs attorney;
k. That at all times the Plaintiff and his attorney were aware that the true cause of the Plaintiffs damage was not him individually or even Miami Plumbing Heating Contractors, Inc.
l. That as a result of the foregoing representations, he was induced and prevented from asserting any real defense, and did not assert same."
The plaintiff's motion continues and alleges:
3. "That in addition to the above, the Plaintiff had settled with co-defendant, Regional Water Authority formerly known as New Haven Water Company, for an undisclosed amount, which amount was not credited to the Defendant at the time of the entry of judgment.
4. That said judgment was obtained by fraud, by mutual mistake, or in the absence of consent of the parties;[1]
5. That if the Defendant, Frank Barucci, was aware that judgment was going to be entered against him, individually, he would have entered a proper defense, and that the nature of the said Frank Barucci's defense would have been as follows:
a. Any work undertaken was undertaken by Miami Plumbing 
Heating Contractors, Inc. and others not by him individually;
b. That the cause of the Plaintiffs damage, if any, was caused by other parties and not by him individually."
Barucci's attached affidavit supporting his motion to reopen tracks each of the allegations of his motion just set out. This affidavit, however, does add the following:
6. "That the true nature of my defense in the above captioned matter is that:
a. Any work undertaken was undertaken by Miami Plumbing 
Heating Contractors, Inc. and others not by me individually;
b. That the cause of the Plaintiffs damage, if any, was caused by other parties and not by me individually."
This motion to reopen the judgment was referred to the undersigned who conducted an evidentiary hearing on it. At that hearing the court was presented with serious questions of CT Page 5801 credibility. The trier of facts is the judge of the credibility of the testimony and the weight to be accorded it. See Maturo v. Gerard, 196 Conn. 584, 588, 494 A.2d 1199 (1985).
"The power of the court to vacate a judgment for fraud is regarded as inherent and independent of statutory provisions authorizing the opening of a judgment; hence judgments obtained by fraud may be attacked at any time." Kenworthy v. Kenworthy,180 Conn. 129, 131, 429 A.2d 837 (1980). The relief of setting aside a judgment claimed to have been based on fraud will only be granted ". . . if the unsuccessful party is not barred by any of the following restrictions: (1) There must have been no laches or unreasonable delay by the injured party after the fraud was discovered, (2) There must have been diligence in the original action, that is, diligence in trying to discover and expose the fraud, (3) There must be clear proof of the perjury or fraud, (4) There must be a substantial likelihood that the result of the new trial will be different." Varley v. Varley, 180 Conn. 1, 4,428 A.2d 317 (1980) (underlining added). Jucker v. Jucker, 190 Conn. 674,677, 461 A.2d 1384 (1980), Cromwell Common Associates,17 Conn. App. 13, 16, 549 A.2d 677 (1988); see Rest. Second Judgments 70. "The existence of fraud for purposes of opening and vacating a judgment is a question of fact. See Jucker v. Jucker, 190 Conn. 674,679, 461 A.2d 1384 (1983); Jackson v. Jackson, 2 Conn. App. 179,195, 478 A.2d 1026, cert. denied 194 Conn. 805, 428 A.2d 710
(1984.)" Cromwell Commons Associates, supra 16-17 upon which the moving party has the burden of proof.
The defendant Barucci claims that the judgment of October 2, 1984 was obtained by fraud for the reasons set out in his motion which appear above. Some twelve witnesses testified and a number of exhibits were introduced at the hearing and, as noted, many questions of credibility were generated.
Initially, something should be said briefly about the institution of this action including against whom it was brought. It arose out of the alleged negligence of the three defendants concerning the construction of Woodview. On or about June 3, 1978, the construction of that apartment housing project had, according to the revised complaint, allegedly "progressed to the point where plumbing, bathroom and kitchen installations and fire sprinklers had been installed by the defendants" Robert G. DiLella, d/b/a Bob's Plumbing and Heating and defendant Frank P. Barucci d/b/a Miami Plumbing and Heating Inc." and arrangements were made with the defendant New Haven Water Co. to turn on the water in the Woodview complex. It is further alleged that on or about that date when the water service was turned on, a large collection of sand, gravel and pebbles, which were within the water system were forced by the water pressure into all parts of the internal plumbing system of this project impacting faucets, CT Page 5802 water supply lines and sprinkler heads as to prevent a water flow where it was intended to occur causing substantial leakage and flooding from back pressure build-up. This, in turn, allegedly caused substantial damage to ceilings, walls, floors of apartments in the project and made most fixtures inoperable and required substantial expenditures to correct the situation. The resulting damages and inconvenience claimed were alleged to have come about by the claimed negligence of DiLella and Barucci as well as that of the New Haven Water Company. Accordingly, the plaintiff Gianotti claimed money damages.
Much attention not only in the motion to reopen itself but also at the hearing on that motion was given to the matter of corporate liability vis a vis individual liability insofar as Barucci was involved. At this point we note that the Summons in this action names as a defendant "Barucci, Frank, d/b/a Miami Plumbing Heating". The return of the service by the sheriff serving the writ, summons and complaint recites that "by special direction of the plaintiff's attorney "that the sheriff left a true and attested copy . . . for . . . Frank Barucci d/b/a Miami Plumbing and Heating. . . at 44 Miami Street, East Haven, . . .". Barucci was sued individually and the default for failure to appear entered on November 3, 1980 was against him individually. Some time thereafter, on March 26, 1984, the matter was referred to Philip R. Pastore, a State Trial Referee for hearing and judgment. It is the later October 2, 1984 judgment (Pastore, J.) that the defendant Barucci's present motion seeks to reopen.
Barucci claims that the evidence before this court demonstrates that, as between himself individually and Miami as a corporation, Miami alone was involved and not himself as an individual. The court does not agree; the credible evidence demonstrates the contrary. Barucci individually was a proper party defendant. It is true that Prete hired the subcontractors on the Woodview project including Miami. Miami, however, was not on this project over the entire period of construction. Toward the end of 1977, Barucci told Gianotti that he was going to file for bankruptcy under Chapter 11.[2] Shortly thereafter the contract under which Miami was performing was assigned to Bob DiLella doing business as Bob's Plumbing Heating and DiLella worked on this project thereafter. Barucci's activities, however, even after DiLella came on the job, continued as before despite the substitution of DiLella. Barucci continued to be the "leadman", the spokesman for the plumbing and heating activities and was there "superintending". The plaintiff, who was usually at the construction site every day, was familiar with this and he relayed such information to Attorney Jones. DiLella worked at the project from about December 1977 through at least early June 1978. Barucci was at the project site on the date in June 1978 when the damage complained of occurred and he was at the site after that CT Page 5803 involved in the repair work at the project. The court concludes that Barucci individually was quite involved in the work at Woodview.
Barucci was, for some time, insofar as the plumbing and heating work at this project was concerned, the leadman, the spokesman and superintending so as properly to be named and sued individually as he was. He was sued individually by the plaintiff upon Jones' advice after, `inter alia', Jones' evaluation of his activities in the context of the plumbing and heating work and his investigation of what occurred, over the period of the construction. Barucci's claim that Jones told him that he was sued simply because Jones wanted to be sure that Barucci would come to the trial is not credited.
In further support of his claim of fraud that the plaintiff and Jones knew that he individually was not a proper party to this litigation, Barucci put into evidence at the hearing the files of two civil matters instituted in this court. Both cases were brought as subrogation matters on behalf of an insurance company[3]
by a Bridgeport law firm which the plaintiff never personally retained. "Subrogation is the `substitution of one person in the place of another with reference to a lawful claim or right against a third person. `Ballentine's Law Dictionary (3d Ed.); see Amica Mutual Insurance Co. v. Barton, 1 Conn. App. 569, 572,474 A.2d 104 (1984). It is frequently referred to as a "doctrine of substitution" involving the substitution of one person in the place of another with reference to a lawful claim. See, Unity Telephone Co. v. Design Service Co. Inc., 160 Me. 188, 192,201 A.2d 177 (1964). Both of these actions sought money damages arising out of the negligence of the defendants[4] named concerning the same incident in June 1978 at Woodview as is involved :in the case before this court. As a practical matter, the plaintiff Gianotti was not managing or directing the litigation in either of subrogation cases. For that matter, neither was Jones. It is true, however, that Gianotti did sign interrogatories submitted to him in these cases. The first case, Docket #183078, was instituted in July 1980 (1980 case) by Cuomo Associates v. Robert DiLella, d/b/a Bob's Plumbing Heating and six other defendants. Significantly, the court file in the 1980 case shows that the defendants named and served include the Miami Plumbing Heating Contractors Inc. and Frank Barucci individually. This court is not persuaded that these two cases support Barucci's claim that Miami as a corporation and not he individually was the proper party defendant in this case.
The defendant Barucci also contends that his claim of fraud on this motion is supported by what transpired concerning a meeting which he had with Jones in 1984 prior to the September 1984 trial before Pastore, J. There seems to be some suggestion CT Page 5804 by him that the plaintiff was also at that meeting; Barucci's testimony on that was quite inconsistent and it is concluded that the plaintiff was not at that meeting. Gianotti did, prior to Barucci's meeting with Jones, speak with Barucci on the telephone concerning this matter. In that telephone discussion, in which Gianotti had reached Barucci at Miami Street in East Haven, the defendant told the plaintiff that he could prove that the New Haven Water Co. was the party that caused the damage at Woodview and that he could give the information to support that position. Gianotti, thereupon asked Barucci to come to court and give that information. Barucci agreed to do so. On May 23, 1984, Jones, as Gianotti's attorney, wrote a letter to Barucci concerning the Woodview lawsuit, indicated that it was now coming to trial, that Barucci would be required to testify as to the circumstances existing at that time and that it would be appreciated if "we could talk about this matter at your convenience so that the judge can have the benefit of your recollection." Significantly, this letter opened with this sentence "At the time, June 3, 1978, that the plumbing fixtures and sprinkler heads became clogged with sand and gravel at the Woodview project (Cuomo and Associates) you were the plumbing contractors or functioning as the manager for Bob's Plumbing and Heating"; this supports the plaintiff's claim that Miami would appear not to have been the plumbing and heating subcontractor at the time of the incident of June 3, 1978, which generated this litigation.
Barucci did speak with Jones before the September 1984 trial. The defendant told him that he had conclusive evidence that the New Haven Water Co. was to blame for the damage complained of and Jones asked him to come to court to so testify. Barucci became aware from talking to Jones in 1984 that he had been sued individually. Jones never told Barucci, as the latter claims, that the only reason that Barucci had been sued individually was to assure his attendance at the trial. Moreover, the credible evidence does not prove that it was represented to Barucci, as claimed, that "he did not have to be concerned about asserting a defense to this matter or that "the true subject of this litigation was the New Haven Water Company and its successors, The Regional Water Authority, and not [Barucci] individually, or Miami Plumbing Heating Contractors, Inc." In terms of those named as defendants in this litigation, it has been already indicated why Barucci was sued individually. Before filing a civil action, it has been said that an attorney has a duty to make an investigation to ascertain that it has some merit. See Rhinehard v. Stauffer,638 F.2d 1169, 1171 (9th Cir. 1979). This was done by Attorney Jones. In addition, the time to gather the minimal necessary "information is before the suit is filed." Cristnelli v. United States, 74 F.R.D. 590 (D.C.C.D. Cal. 1977). This also was done here. CT Page 5805
Going on, the defendant maintains that he did not appear at trial in September 1984 or defend himself because of the representations made to him by the plaintiff and/or his attorney and that his defense would have been that any work undertaken was done so by Miami Plumbing Heating Contractors Inc. and not him individually. He argues that the cause of the plaintiff's damages, if any, was by other parties and not by him individually.
Barucci had agreed to come to the trial after the plaintiff and Jones asked him to do so. For some time prior to the 1984 trial before Judge Pastore and thereafter Barucci was working in Virginia. His Connecticut address, however, before the trial, at the time of the trial in September 1984, at the time of the hearing and damages in October 1984 and for some time thereafter was 44 Miami Street in East Haven. Jones spoke to Barucci over the telephone in Virginia shortly before the trial to let him know the trial time and its date. After two or three days of trial the matter was settled as against the defendant New Haven Water Co. Prior to the time at the trial when the plaintiff settled with the defendant New Haven Water Co., Attorney Jones told Judge Pastore that Barucci was expected to be at the trial the next day. After the case had settled as against the Water Co., Jones called Barucci and told him the matter had settled and that there would be no need for him to come to court. Jones did not tell or advise Barucci that he did not have to appear at the hearing in damages despite Barucci's claim to the contrary. The court concludes that Barucci was not fraudulently prevented from appearing at the trial in September 1984.
There is also an assertion by the defendant in his motion to reopen on the issue of fraud that the plaintiff "fraudulently testified at the time of trial [in 1984] that [Barucci] was individually doing business as Miami Plumbing Heating Contractors, Inc." Here the defendant points to the time of the introduction at the trial of the subcontract involving Barucci the one hand and Cuomo Construction and Mr. Prete. At that time at the trial Attorney Jones asked the plaintiff the following transpired:
"Q From your knowledge did the general contractor engage a subcontractor by the name of Frank Barucci, I have DBA Miami Plumbing?
A Right.
Q What was he to do?
A Do all the plumbing and heating in the building.
Q Would you identify this as the subcontract agreement CT Page 5806 between Cuomo Construction and Mr. Prete?
A Yeah, 322,000, right?
Q How much is that amount?
A $322,000."
Immediately thereafter the plaintiff offered this contract as a full exhibit and it was so marked. The Court (Pastore, J.) itself then asked the plaintiff to identify the signatures on the contract which he did. Barucci suggests that this may or may not have been a fraud on the court. This court does not believe so. The court heard the testimony, it had the subcontract, it examined it, it asked the plaintiffs about it. The court (Pastore, J.) knew from the court file that Barucci had been sued individually and in fact pointed that out later on October 2, 1984 at the hearing in damages to Attorney Louise Lamontagne who appeared for Barucci and was given the file by the court to examine at that time. Moreover, when this contract was offered and admitted at the 1984 trial the court, it can fairly be inferred that the court knew from the court file that Barucci individually had already been default for failure to appear almost four years earlier.
The defendant Barucci also contends that he was prevented from appearing at the hearing in damages which was held on October 2, 1984. In this connection he maintains that he was at no time aware that there was going to be a hearing in damages as to him on that date, that had he been so aware he would have interposed a defense, that he was also not aware that a default for failure to appear had been entered against him and that he did not learn of the judgment against him until some time much after the hearing in damages. Moreover, Barucci argues that because Attorney Jones knew that he was in Virginia and had his telephone number that Jones, having been in touch with him, should have pointed this out to Judge Pastore rather than, leaving it up to Judge Pastore "after Judge Pastore's representation as to the notice procedure being followed." This, Barucci, maintains "would appear . . . is virtually a fraud on the Court." This "nonaction" of Jones, the defendant goes on, "was especially onerous" in view of Practice Book 369 concerning the necessity of, a ten day notice by the court to the defendant that a default has been entered where there may be a hearing in damages. Barucci points out that Judge Pastore sent a letter addressed to him at 44 Miami Street in East Haven only eight days before the hearing in damages.
The short answer to all these claims is that Barucci did appear by counsel who participated in the hearing in damages on October 2, 1984. On October 2, 1984, Attorneys James F. Cirillo, Jr. and Louise LaMontagne were associated with the same law firm CT Page 5807 in New Haven. At that time Cirillo was Barucci's attorney. Attorney Cirillo testified before this court. Cirillo has. known Barucci for approximately twelve years and has represented him on various matters. Cirillo learned that there was to be a hearing in damages in this matter before Judge Pastore on October 2, 1984 because Barucci's wife, who lived at 44 Miami Street in East Haven, "brought a letter or a notice from the court" to that effect to Cirillo's office several days before October 2, 1984. Cirillo knew from conversations with Barucci as well as his wife that at this time Barucci was in Virginia. He was not able to discuss this letter or notice with Barucci as he could not reach him. Cirillo asked Attorney LaMontagne, an associate in his office, to appear before Judge Pastore on October 2, 1984, and to make a "statement for the record that the defendant [Barucci] was improper, since there was a corporate entity known as Miami Plumbing and Heating Company, and that on the caption it's referred to as d.b.a." Cirillo also testified: "So I instructed Louise LaMontagne to appear before Judge Pastore, represent to the court that there was an improper party to the action, that the defendant was in fact a corporation not a proprietorship."
Attorney LaMontagne also testified before this court indicating that she went to the October 2, 1984 hearing at Cirillo's request. She did not remember whether she had ever discussed this matter with Barucci; she did not think that she had. At the outset of that hearing Judge Pastore, after referring to his September 24, 1984 letter[5] to Frank Barucci asked who was there with reference to Frank Barucci. Attorney LaMontagne replied that she was whereupon the court asked if she had filed an appearance to which she said that she had not and she asked to be allowed to explain why she was there. The court permitted her to do so and she said ". . . we just learned of this lawsuit. We represent Mr. Barucci and we have also represented corporations in which he's had an interest over the years. We just learned of this default last Thursday when your letter apparently come to Mr. Barucci telling him about the hearing in damages this morning. . . ." Going on, she indicated concern about "at least two other lawsuits pending that we believe arise out of the same set of circumstances that had to do with this lawsuit . . ." and, further concern, that anything that happened in the action before Judge Pastore not prejudice their right as to the other two actions and "that this should not be res judicata as to liability in any of the other pending actions."
Asked by the court if she was making any objections insofar as the hearing in damages was concerned she said that she was and then articulated the claim that the default was entered "against Frank Barucci, d/b/a which never existed. There was never a d/b/a. He was incorporated at all times." Thereafter, the court showed her "the return on the file insofar as service on Barucci CT Page 5808 is concerned" which she looked at. The court said that it would go ahead and that with reference" to whatever actions [Attorney LaMontagne] take with reference to this matter here [the court] would deal with as I go along." She then filed over her signature her firm's appearance for Frank Barucci. The hearing in damages proceeded and Attorney LaMontagne remained throughout. During that time an exhibit was offered and admitted to which she had no objection, she was given an opportunity to examine to the sole witness (the plaintiff) and also consulted with Attorney Jones in the calculation of the interest component of the judgment which judgment was entered orally by Judge Pastore at the end of the hearing in open court.
There can be no question but that the defendant appeared at the hearing in damages through counsel when Attorney LaMontagne filed the general appearance for him personally and participated in that hearing. Significantly, there cannot be any cognizable claim on the evidence that her appearance on October 2, 1984 was fraudulently obtained by the plaintiff and/or Attorney Jones on his behalf. It is clear that, the defendant's claims to the contrary about the notice give by Judge Pastore's letter, that that letter found its way to 44 Miami Street in East Haven and that Barucci's wife brought it to Attorney Cirillo's office several days before the hearing in damages. Cirillo, who had represented Barucci in the past, "instructed" Attorney LaMontagne to go to the hearing on October 2, 1984. In accordance with his instructions Attorney LaMontagne put on the record the "no d.b.a. but corporate liability" claim made in the present action. Construing the transcript of that hearing most favorably to Barucci no objection was made to the court proceeding at that time though it might appear that Attorney LaMontagne would have preferred otherwise although she said that she recognized that that it was some four years since the default for failure to appear had been entered against Barucci individually.[6] No request for a continuance was made and no exception was taken during that hearing.
The defendant's claim on Jones' "nonaction" being "especially erroneous" because Practice Book 369 "requires" that when a default is entered against a defendant, the clerk must notify him of that to give him ten days within which to advise opposing counsel whether he intends to contest the hearing in damages is without merit. The default for failure to appear was entered on November 3, 1980 almost four years earlier and Practice Book 369 simply did not so provide on November 3, 1980 date as it did in 1984.
With reference to Barucci's claim that Attorney, Jones, because he had some contact with the defendant and knew he was in Virginia and, therefore, Jones should have pointed this out to Judge Pastore "after Judge Pastore's representation to the notice CT Page 5809 procedure being followed", the defendant overlooks some other evidence. First, Gianotti had earlier reached Barucci at the latter's Miami Street, East Haven address where Barucci's wife and children resided. Barucci did come back to Connecticut at intervals to visit his family including his mother. Even assuming the record could show that Judge Pastore had indicated the notice he intended to attempt to give Barucci of the hearing in damages, Jones, in our view, had no duty to act as Barucci suggested. Barucci's connection with 44 Miami Street was real and continuing. In any event, Judge Pastore's letter reached Barucci's last-known address which was in fact his home address, his wife got the letter to counsel who did appear and participate in the hearing in damages.
After considering the claims of fraud made by the defendant Barucci, the court concludes that he has not sustained his burden of proof on the issue of fraud.
We turn next to the claims of Barucci that there was not an unreasonable delay in bringing the instant motion to reopen after the alleged fraud was discovered as well as his claim that there was diligence in the underlying action in trying to discover and expose the alleged fraud. See Varley v. Varley, supra. Barucci himself argues that he first learned of the 1984 judgment against him one year later when Jones brought him into court for an Examination of Judgment Debtor proceeding. Barucci appeared in court at that time, i.e. November 1, 1985, represented by Attorney Cirillo and was examined. It is his claim that at that time Attorney Jones told him in the courthouse hallway not to worry about the case as it would be dropped in a couple of years; this is not credited. Barucci maintains that he heard nothing further about the case until 1989 when the plaintiff retained present counsel who proceeded against him individually. He claims that because he was not at the 1984 trial the issue of whether or not there may have been fraud could only arise from an examination of the transcript of the 1984 proceedings which were "immediately ordered", in January 1990 but which "were not immediately made available" and, thereafter had to be studied after the receipt of the transcript in May 1990. Up to this point, because of Jones' representations, Barucci claims that he was not aware that he had reason for concern. However, he contends that once he learned for the first time that the plaintiff was seriously pursuing the 1984 judgment, he reacted immediately and once the fraud was discovered, an application to reopen the judgment presently before the court was filed.
The court cannot accept these claims for the following reasons. Even assuming arguendo that the knowledge of the judgment entered on October 2, 1984 was not to be imputed to Barucci even though it was entered in open court in the presence CT Page 5810 of counsel who had appeared for him who, in turn, had been sent to that hearing by Attorney Cirillo who had previously represented him and made the same "no d.b.a. but corporate liability" now made, certainly Barucci himself actually knew that judgment had been entered against him individually in November 1985 when he appeared in court with counsel for examination as a judgment debtor. In addition, nothing was done at that time in 1985 including no effort to obtain any trial transcript. It is not overlooked that he actually knew before the September 1984 trial that the he had been sued individually. Moreover, Mr. Barucci does not appear to be a wholly unsophisticated businessman. It is quite reasonable to say that by learning in 1985 of the judgment against him that he "discovered" that the representations of the plaintiff and plaintiff's counsel were "fraudulent" and reasonable diligence to explore the claimed fraud was then called for.
Furthermore the court has taken judicial notice of an action brought to this court in December 1988, i.e. Docket # 278247 Frank P. Barucci v. Howard Gianotti in which the present defendant asked that the October 2, 1984 judgment be set aside and that a new trial be ordered. His complaint in that action, which was brought by Attorney Cirillo, alleged, inter alia, the entry against him of the October 2, 1984 judgment for $41,845.75 after his default for failure to appear, that he had a valid defense in that he never did business as Miami Plumbing and Heating Inc. which was a valid Connecticut corporation of which he was an employee, that he had no opportunity to present "this just defense" at the time the action was originally commenced and the judgment was entered to his prejudice. A motion to strike was interposed to that complaint based on the ground that Barucci, as the plaintiff on that action, had not complied with G.S. 52-582 which requires that a petition for a new trial must be brought within three years after the judgment complained of. The Motion to Strike was granted. Barucci did not plead over and Gianotti moved for judgment which was entered for him. No appeal was taken by Barucci.
It is true that there are no allegations of fraud in this December 1988 action instituted by Barucci but, as bearing on his diligence and/or delay on discovery of the alleged fraud there is no evidence that at any time before January 1990 did Barucci ever ask his attorney to obtain the transcript that he now claims constitutes that his "discovery" of the alleged fraud. Reason readily suggests that Barucci, having known at the very least since 1985 of the judgment against him as an individual and given his repeated claims that that judgment was simply not against a responsible party that diligence required a more timely inquiry into the situation including a much earlier obtaining of the transcript of the 1984 trial. CT Page 5811
After his 1988 action for a new trial failed, Barucci did nothing until plaintiff's present counsel sought to attach his IRA in 1990. Barucci's present counsel ordered the transcript of the 1984 trial in January 1990 and received it in May 1990. After Barucci's Motion to Exempt his IRA from Levy on execution was denied (D. Dorsey, J.), the instant motion to reopen the judgment was filed in January 1991.
Under all these circumstances the court concludes that the defendant Barucci was not diligent in attempting to discover and expose the fraud complained of and that he did unreasonably delay bringing the instant motion after he "discovered" the fraud of which he complains.
Under Varley, the relief the defendant Barucci seeks in his present motion to reopen can only be granted if he is not barred by any of the restrictions set out in that case. See Vanley v. Varley, supra, 4; see also Kenworthy v. Kenworthy, supra. It follows from what has been said in this opinion that the defendant Barucci's motion to reopen the judgment of October 2, 1984 must be and is hereby denied.
ARTHUR H. HEALEY, State Trial Referee